465 S.E.2d 374

**Dale CLARK, Terry Clark, Individually, and Felicia Clark and Kayla Clark, By and Through Their Mother and Next Friend, Terry Clark, Plaintiffs Below, Appellants,**

v.

**Terry DUNN and the Department of Natural Resources, Defendants Below, Appellees.**

No. 22767.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Oct. 30, 1995.

M. Andrew Brison, Charles Phalen, Jr., Mitchell & Murray, Charleston, for Appellant.

Stephen P. McGowan, Jan L. Fox, Jeffrey K. Phillips, Steptoe & Johnson, Charleston, for Appellees.

ALBRIGHT, Justice:

The appellant, Dale Clark, asks this Court to reverse the March 18, 1994 order of the Circuit Court of Kanawha County, West Virginia, which granted summary judgment for the appellees, Conservation Officer Terry Dunn and the West Virginia Department of Natural Resources. The lower court determined Officer Dunn was a public official entitled to qualified immunity for discretionary actions performed within the scope of his employment, and therefore he could not be held liable for negligence.

On November 26, 1991, the appellant was hunting in Calhoun County, West Virginia, with Eugene Bailey, Steve Bailey, and James Bailey. Officer Dunn was patrolling Sears Run Road in Calhoun County, as he investigated a complaint of illegal doe hunting. As he explored the nearby woods, following a blood trail consistent with that of deer "drag marks," Dunn ran into fourteen-year-old James Bailey, who told him he was hunting with his father. Dunn asked James Bailey to unload his firearm and questioned him. Shortly thereafter, they heard voices and approached the appellant, Eugene Bailey, and Steve Bailey. The appellant and Eugene Bailey were "hunkered down," sitting with their guns across their laps.

Testimony regarding exactly what happened differs at this point. According to Dunn, Steve Bailey began walking away from the others. Eugene Bailey said Steve Bailey ran when he saw Dunn, and the appellant testified that Steve Bailey ran when Dunn hollered something at him. Dunn says he hollered to Steve Bailey, "Hey, I want to check your license," and denies he ever requested licenses from the appellant or Eugene Bailey. Both the appellant and Eugene Bailey testified that Dunn told them to lay down their guns and get out their hunting licenses. The appellant put down his gun, and Eugene Bailey reached to get his license without putting his gun down. Dunn drew his revolver and held it at a ready position. When Dunn attempted to remove the firearm from Eugene Bailey's lap, the firearm discharged, and the appellant was shot in the left leg.

The appellant subsequently filed a civil complaint alleging negligence against Dunn and the Department of Natural Resources by reason of the discharge of the firearm. The appellees moved for summary judgment, and the motion was heard before the Circuit Court of Kanawha County. The appellees argued Dunn and the Department of Natural Resources enjoyed qualified immunity and, as a matter of law, a negligence action could not lie, given the facts of the case. The lower court agreed. In its order entered on March 18, 1994, the court granted the appellees' motion for summary judgment, explaining:

> It is clear that as a public official, officer Dunn is entitled to qualified immunity for his actions in performing discretionary acts. The doctrine protects all government officials who exercise their discretion in fulfilling their duties, unless the official abuses that discretion by violating a clearly established constitutional right. *Negligence simply is not sufficient for liability to be imposed under this standard or doctrine.* Thus, officer Dunn cannot be held liable and if he cannot be held liable neither can the Department of Natural Resources. (Emphasis added.)

The appellants contend the trial court erred in granting summary judgment for the appellees upon a determination that Dale Clark could not maintain an action for negligence against the Department of Natural Resources and one of its conservation officers because of the doctrine of qualified immunity. Although the appellants conclude that "if their cause of action was premised upon a violation of their civil and/or constitutional rights then perhaps appellees did enjoy 'qualified immunity' ...," appellants argue their suit against Dunn and the Department of Natural Resources, based solely on a theory of negligence, may be maintained. The appellants' complaint stated, in relevant part:

> That while the plaintiff was so hunting, the defendant, Terry Dunn, either acting individually or in his capacity as an agent, servant or employee of the State of the Department of Natural Resources, stopped your Plaintiff and others, during which time he *negligently and carelessly* grabbed a weapon being held by Eugene Bailey, causing the same to discharge and therefore causing a bullet to enter the left leg of your Plaintiff and to, among other things, shatter the bone in his left leg and to destroy the tissue within that leg. (Emphasis added.)

In response, the appellees argue they are entitled to immunity from an award of damages because the appellant was not deprived of any right clearly established by law or the State or Federal Constitutions.

■ The issue now before this Court is whether the appellees, Terry Dunn and the Department of Natural Resources, are entitled to qualified immunity from liability for Officer Dunn's alleged negligence.

In their petition for appeal, the appellants relied on the West Virginia Governmental Tort Claims and Insurance Reform Act (the Act), W.Va.Code § 29–12A–1, *et seq.* They asserted that the Act "clearly imposes liability in situations involving the negligence of employees acting within the scope of their employment. The Act provides that '[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.'" *Beckley v. Crabtree,* 189 W.Va. 94, 428 S.E.2d 317, 320 (1993). The appellants concede in their brief that the appellees do not come within the purview of the Act. They argue nonetheless that the Legislature intended for victims of State negligence to be able to seek redress for their injuries in the courts. The appellants maintain that because they assert a claim of simple negligence against the appellees, rather than civil or constitutional violations, the appellees are not entitled to qualified immunity.

■ Initially, we note that the Department of Natural Resources is not a political subdivision,[1] but instead is a State department or agency. W.Va.Code § 20–1–3. Appellee Dunn is an employee of that State department authorized to enforce the provisions of W.Va.Code § 20–7–1, *et seq.* As such, he is a law enforcement officer and public official of the State, not of a political subdivision.

---

**1.** West Virginia Code § 29–12A–3 (1986) defines "State" and "Political subdivision," as used in the Act, as:

> (c) "Political subdivision" means any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two [§ 16–2–1 et seq.], chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

> (e) "State" means the state of West Virginia, including, but not limited to, the Legislature, the supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West Virginia. "State" does not include political subdivisions.

■ The State enjoys constitutional or sovereign immunity, as expressed in Section 35, Article VI, of the West Virginia Constitution, in pertinent part, as follows: "The State of West Virginia shall never be made defendant in any court of law or equity...." This grant of constitutional immunity extends to the discretionary duties and functions of the Department of Natural Resources, as an agency of the State. *See Hesse v. State Soil Conservation Committee,* 153 W.Va. 111, 168 S.E.2d 293 (1969).

This Court has consistently held that the Legislature may not waive the State's constitutionally mandated immunity from suit. *See Stamper v. Kanawha County Board of Education,* 191 W.Va. 297, 445 S.E.2d 238 (1994); *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987); *Ohio Valley Contractors v. Board of Education,* 170 W.Va. 240, 293 S.E.2d 437 (1982); *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969); *State ex rel. Scott v. Taylor,* 152 W.Va. 151, 160 S.E.2d 146 (1968); *Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961); *Ward v. County Court,* 141 W.Va. 730, 93 S.E.2d 44 (1956). However, we have recognized an exception to this immunity. In creating and continuing the State Board of Insurance, in W.Va.Code § 29–12–5(a) (1957) the Legislature provided, in pertinent part:

The board shall have general supervision and control over the insurance of all state property, activities and responsibilities, including the acquisition and cancellation thereof; determination of amount and kind of coverage, including, but not limited to, deductible forms of insurance coverage, inspections or examinations relating thereto, reinsurance, and any and all matters, factors and considerations entering into negotiations for advantageous rates on and coverage of all such state property, activities and responsibilities. *Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the state of West Virginia against claims or suits....* (Emphasis added.)

In *Pittsburgh Elevator Company v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675, 688–89 (1983), we said:

The Legislature has not, by enactment of W.Va.Code § 29–12–5, sought to waive the State's constitutional immunity from suit. Rather, we read the statute as the Legislature's recognition of the fact that where recovery is sought against the State's liability insurance coverage, the doctrine of constitutional immunity, designed to protect the public purse, is simply inapplicable. As this Court recently stated in *Gooden v. County Comm'n of Webster County,* 171 W.Va. 130, 298 S.E.2d 103, 105 (1982): "Where liability insurance is present, the reasons for immunity completely disappear."

■ The exception was addressed more recently in *Eggleston v. West Virginia Department of Highways,* 189 W.Va. 230, 429 S.E.2d 636 (1993). *Eggleston* is a case involving a charge of negligence under an insurance policy purchased for the Department of Highways to provide coverage for "bodily injury" arising out of and occurring during performance of construction on State highways until completion of the project. In syllabus point 1 of that case, the Court said:

W.Va.Code, 29–12–5(a) (1986), provides an exception for the State's constitutional immunity found in Section 35 of Article VI of the West Virginia Constitution. It requires the State Board of Risk and Insurance Management to purchase or contract for insurance and requires that such insurance policy "shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits."

In support of the position that the State and its officer may be sued in negligence for discretionary acts performed within the scope of employment, the appellants also cite *State ex rel. West Virginia Department of Transportation, Highways Division v. Madden,* 192 W.Va. 497, 453 S.E.2d 331 (1994). In *Madden,* the Court commented:

[T]here are instances in which the State may be a defendant at trial for the commission of alleged negligent acts. Yet,

these cases stand for the proposition that coverage for such liability accruing from alleged negligent acts by the State is covered by the limits of the State's liability insurance coverage and not state funds. Immunity is relaxed only to the extent of the liability insurance coverage.

*Id.* at 334.

We assume that the appellants expected to utilize this exception to the constitutional immunity of the State and its officer acting within the scope of his employment in this action. However, the issue of qualified or official immunity now before the Court is not resolved solely by the application of that exception.

Here, we address whether there is a further source of immunity, in addition to that granted by Section 35, Article VI of the Constitution, which affords a different kind of limited immunity to the State and its law enforcement officer for discretionary acts negligently committed within the scope of his employment. We do not have before us the kind of express insurance contract provisions found in *Madden,* providing coverage against "bodily injury." Accordingly, *Madden* cannot be read to address the issue of additional limited immunity. Similarly, although *Pittsburgh Elevator* involved allegations of negligence and claims of immunity, it did not address the issue now before the Court.

■ The doctrine of qualified or official immunity for government officials generally and law enforcement officers in particular was reaffirmed by this Court in *Goines v. James,* 189 W.Va. 634, 433 S.E.2d 572 (1993). Pursuant to 42 U.S.C.A. § 1983, the plaintiffs in *Goines* alleged violations of their Fourth Amendment rights. In rejecting the plaintiffs' claim, the Court adopted the syllabus of *Bennett v. Coffman,* 178 W.Va. 500, 361 S.E.2d 465 (1987), as formulated by the United States Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982):

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.

More recently, in *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591, 593 (1992), we commented that "our law with regard to public official immunity is meager...." However, in *Chase,* the Court then characterized the syllabus of *Bennett,* as quoted above, as containing the "preeminent test of a public official's immunity." *Id.* at 596.

*Chase Securities* addressed the question of whether three State executive officials—the Governor, the Treasurer, and the Auditor—were entitled to immunity where the State filed suit against a brokerage company, Chase Securities, Inc., to recover losses sustained by the Consolidated Fund. The three public officials were members of the State Board of Investments, which managed the Fund, and Chase Securities filed a third-party complaint against them which was dismissed by the circuit court. In affirming the lower court, we observed that "it would seem appropriate to construct, if possible, an immunity standard that would not conflict with the federal standard." *Id.* at 595. After an analysis of public official immunity, primarily in the context of Section 1983 suits, we stated:

It is obvious that an immunity standard for a public official needs to encompass all types of public official liability, not just the range of cases covered by Section 1983 suits. It has been said that Section 1983 essentially creates tort liability. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Paxton v. Crabtree,* 184 W.Va. 237, 400 S.E.2d 245 (1990). Consequently, *the thrust of any attempt to establish liability against a public official is the violation of some duty attendant to the official's office and a resulting harm to the plaintiff.* This analysis essentially adopts the common law tort concept that liability results from the

violation of a duty owed which was a proximate cause of the plaintiff's injury. *See, e.g., Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981); *Atkinson v. Harman,* 151 W.Va. 1025, 158 S.E.2d 169 (1967). *The one difference in immunity cases is that the official's act must be shown to have violated clearly established law of which a reasonable person would have known. The concept of a reasonable person is not entirely foreign to common law principles of negligence.*

*Chase Securities,* 424 S.E.2d at 599 (emphasis added; footnotes omitted).

■ In the syllabus of *Chase Securities,* we concluded that:

A public executive official who is acting within the scope of his authority and is not covered by the provisions of W.Va.Code, 29–12A–1, *et seq.* [the West Virginia Governmental Tort Claims and Insurance Reform Act], is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. To the extent that *State ex rel. Boone National Bank of Madison v. Manns,* 126 W.Va. 643, 29 S.E.2d 621 (1944), is contrary, it is overruled.

In the case now before us, the appellees argue that summary judgment was proper because *Chase Securities* requires that claims against public officials be based upon violation of a right clearly established by statute or constitutional requirements. We agree.

Officer Dunn is properly considered a public officer, employed by a State agency not covered by the provisions of W.Va.Code, 29–12A–1, *et seq.,* the West Virginia Governmental Tort Claims and Insurance Reform Act. His attempt to disarm the appellant's companion, Eugene Bailey, did not give rise to a deprivation of a right clearly established by statutory law or constitutional rights. Moreover, like the law enforcement officer in *Goines v. James, supra,* Officer Dunn was engaged in the performance of discretionary judgments and actions within the course of his authorized law enforcement duties.[2] In performing those discretionary duties, Officer Dunn should not be faced with the choice of either inaction and dereliction of duty or "being mulcted in damages" for doing his duty.

■ We adopt the principle noted in *City of Fairmont v. Hawkins,* 172 W.Va. 240, 304 S.E.2d 824, 829 n. 7 (1983), with respect to the performance of such discretionary duties:

[I]f a public officer ... is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, *he is not liable for negligence or other error* in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

*Quoting Gildea v. Ellershaw,* 363 Mass. 800, 814, 298 N.E.2d 847, 858–59 (1973) (emphasis added); *see also, Graney v. Board of Regents,* 92 Wis.2d 745, 286 N.W.2d 138 (1979); *Mobile Enterprises, Inc. v. Conrad,* 177 Ind. App. 475, 380 N.E.2d 100 (1978).

■ As a conservation officer employed by the Department of Natural Resources, Officer Dunn is a public officer and official entitled to the benefit of the doctrine of qualified or official immunity. Accordingly, in the absence of an insurance contract waiving the defense,[3] we conclude that the doctrine of qualified or official immunity bars a claim of mere negligence against the Department of Natural Resources, a State agency not within the purview of the West Virginia Governmental Tort Claims and In-

---

**2.** This opinion does not address causes of action arising out of ministerial functions of government agencies or officers. *See Chase Securities, supra; City of Fairmont v. Hawkins,* 172 W.Va. 240, 304 S.E.2d 824 (1983); *Clark v. Kelly,* 101 W.Va. 650, 133 S.E. 365 (1926).

**3.** The specific provisions of the insurance contract need not waive the defense *in haec verba.* It is sufficient if the defense is waived by language in the contract clearly covering the activity or injury complained of. *See Madden, supra.*

surance Reform Act, W.Va.Code § 29–12A–1, *et seq.*, and against Officer Dunn, an officer of that department acting within the scope of his employment, with respect to the discretionary judgments, decisions, and actions of Officer Dunn which are the subject of the complaint in this action.

For the foregoing reasons, the March 18, 1994 order of the Circuit Court of Kanawha County is affirmed.

Affirmed.