# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

R.L.D. and K.D., individually,
and as next of friends of M.I.D.,
an infant under the age of
eighteen years,
**Plaintiffs Below, Petitioners**

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 17-1087** (Kanawha County 14-C-1348)

West Virginia Department of
Health and Human Resources, a
political subdivision of the
State of West Virginia, Erica Garcia,
individually and in her official capacity
as an employee of the West Virginia
Department of Health and Human Resources,
and LaDella Blair, individually and in her
official capacity as an employee of the
West Virginia Department of Health and
Human Resources,
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners R.L.D. and K.D., the paternal grandparents of M.I.D., by counsel Michael T. Clifford, appeal the Circuit Court of Kanawha County's November 14, 2017, order granting respondents' motion for summary judgment.[1] Respondents West Virginia Department of Health and Human Resources ("DHHR"), Erica Garcia, and LaDella Blair, by counsel Jace H. Goins, filed a response in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in granting respondents' motion for summary judgment because genuine issues of material fact existed that should have been resolved by a jury.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2010, petitioners, the paternal grandparents of the child at issue, were granted legal guardianship of M.I.D. pursuant to an unrelated proceeding in the Circuit Court of Wetzel County. Subsequent to the granting of legal guardianship, M.I.D. resided with petitioners in Wetzel County at all times relevant to this appeal.

On July 19, 2012, the DHHR filed an abuse and neglect petition in the Circuit Court of Kanawha County concerning M.I.D. and his sister.[2] The initial petition contained several allegations of abuse and neglect against the children's parents, including domestic violence in the presence of M.I.D.'s sister, a lack of proper hygiene for the sister, and a failure to provide the children with necessary food, clothing, supervision, and housing.[3] Accordingly, the petition alleged that the children's best interests required temporary placement with the DHHR. The petition further indicated that, at the time of the petition's filing, the sister resided in foster care with the DHHR and M.I.D.'s address was located in Wetzel County, West Virginia. It is undisputed that the address listed for M.I.D. was petitioners' address in Wetzel County. The initial petition did not, however, include petitioners as named respondents. That same day, the circuit court entered an order finding that imminent danger to the physical well-being of the children existed and temporarily committing them to the custody of the DHHR. At that time, however, M.I.D. remained in petitioners' custody.

Four days later, the circuit court held a preliminary hearing on the petition, during which the DHHR indicated that it intended to file an amended petition to include M.I.D.'s legal guardians – petitioners herein – as adult respondents. The circuit court further ordered that the children remain in the temporary custody of the DHHR. According to petitioners, they were instructed by DHHR personnel to appear for this hearing with the child. Upon arriving for the hearing, the DHHR then took M.I.D. into its physical custody, pursuant to the circuit court's orders transferring temporary custody to the DHHR. On August 3, 2012, the DHHR filed an amended petition that recognized petitioners as M.I.D.'s legal guardians and residents of Wetzel County. The petition further alleged that petitioners "have a substantiated [Child Protective Services ("CPS")] history of abusing children" and "a substantiated claim based upon the negligent supervision" of another child who was no longer in the home. Accordingly, the circuit court ordered that the children continue in their placement with the DHHR. Petitioners were thereafter appointed legal counsel.

Later in August of 2012, the circuit court held a preliminary hearing on the amended

---

[2]At the time of the petition's filing, the sister resided with her parents. Given that petitioners did not have custody of the child at the time of removal, that child is unrelated to petitioners' appeal.

[3]As it specifically related to M.I.D., the original petition alleged that the parents "placed the child[] in risk of harm" by their failure to provide "any financial support, whether in kind or in specific monetary amounts during at least some periods" of his life.

petition and found probable cause to believe that M.I.D. was abused and/or neglected. Because the circuit court found that placement of the child in petitioners' home was contrary to his best interests, it ordered continued custody with the DHHR. The circuit court did, however, order that petitioners have supervised visitation with the child.

In September of 2012, the DHHR filed its second amended petition wherein it alleged, in relevant part, that petitioners neglected M.I.D. and also previously engaged in emotional abuse of a child who used to be in the home. The petition further alleged that, upon removal, M.I.D. had "a strong, sour and foul odor." In November of 2012, the circuit court held a preliminary hearing on the second amended petition and an adjudicatory hearing in regard to petitioners. Ultimately, the circuit court found that it did not have jurisdiction over M.I.D. because petitioners and the child resided in Wetzel County. As such, the circuit court dismissed the abuse and neglect petition against petitioners, but ordered that petitioners and the child remain parties to the matter. The circuit court additionally ordered that petitioners be granted physical custody of M.I.D. That same day, the DHHR returned the child to petitioners' custody.

In February of 2013, the circuit court held a hearing during which it terminated the parental rights of the M.I.D.'s parents. At that time, the circuit court ordered that the child be placed in petitioners' permanent legal and physical custody, finding that such placement was in the child's best interests.

Following dismissal of the abuse and neglect petition against them, petitioners filed a civil action against the DHHR and two of its employees. The complaint alleged the following causes of action: (1) fraud; (2) "constitutional tort and statutory violations"; (3) child concealment; and (4) outrage/intentional infliction of emotional distress. After the civil action was initiated, respondents filed a motion for summary judgment, which the circuit court granted by order entered on November 14, 2017. According to the circuit court, petitioners' causes of action were "wholly unfounded due to the fact that every action [respondents] took in the subject abuse/neglect proceeding was in accordance with [c]ourt orders." The circuit court further found that "the abuse/neglect proceedings were conducted properly and in accordance with the law." Finally, the circuit court found that "[a]dditional defenses exist[ed] by virtue of privilege and immunity, and due to the fact that two (2) of [petitioners'] claims are predicated upon statutes that do not create implied, private causes of action." Because there were no genuine issues of material fact, the circuit court found that respondents were entitled to summary judgment. It is from this order that petitioners appeal.

We review petitioners' appeal of the circuit court's summary judgment order de novo. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("[a] circuit court's entry of summary judgment is reviewed *de novo*."). Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be granted "where the moving party shows by 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (footnote omitted).

On appeal, petitioners' arguments are based almost entirely on the fact that the DHHR failed to include them as named respondents in the original petition. According to petitioners, the DHHR was fully aware of the fact that they had previously been granted legal guardianship of M.I.D. and, therefore, perpetrated a fraud on the circuit court by excluding them from the original petition or presenting the allegations in a way that implied that the child lived in the parents' home in Kanawha County. Petitioners moreover allege that instead of providing them notice of the abuse and neglect proceedings as required, the DHHR fraudulently induced them to bring the child to the preliminary hearing so that the DHHR could assume custody of him. According to petitioners, the DHHR was aware of the fact that M.I.D. was being properly cared for in their home, as evidenced by reports from DHHR employees from 2010 that attested to their care. We find, however, that petitioners are not entitled to any relief, as the circuit court correctly ruled that respondents in this matter are immune from liability.

"Qualified immunity is broad and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *W.Va. State Police v. Hughes*, 238 W.Va. 406, 411, 796 S.E.2d 193, 198 (2017) (quoting *Hutchison v. City of Huntington*, 198 W.Va. 139, 148, 479 S.E.2d 649, 658 (1996)). "Further, '[a] public officer is entitled to qualified immunity for discretionary acts, even if committed negligently.'" *Crouch v. Gillispie*, 240 W.Va. 229, __, 809 S.E.2d 699, 704 (2018) (quoting *Maston v. Wagner*, 236 W.Va. 488, 500, 781 S.E.2d 936, 948 (2015)). Moreover, this Court has held that

> "[t]o the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus Point 11, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

*Crouch*, 240 W.Va. at __, 809 S.E.2d at 701, Syl. Pt. 3.

This Court has previously addressed the discretionary nature of DHHR investigations into child abuse and neglect and the resulting decision to file, or decline to file, a petition upon such investigation. In *Crouch*, we noted that "[t]he challenges facing a CPS worker in making the determination of whether or not a situation of present danger exists and, so, whether to remove a child from a home, strikes at the heart of qualified immunity[.]" 240 W.Va. at __, 809 S.E.2d at 706. Indeed,

> [i]f a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that

4

decision, at the suit of a private individual claiming to have been damaged thereby.

*Id*. (quoting Syl. Pt. 4, *Clark v. Dunn*, 195 W.Va. 272, 465 S.E.2d 374 (1995)). "Qualified immunity is 'justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.'" *Id*. (quoting *A.B.*, 234 W.Va. at 507-08, 766 S.E.2d at 766-67)).

We have further explained that "[t]he purpose of such official immunity is not to protect an erring official, but to insulate the decision making process from the harassment of prospective litigation. The provision of immunity rests on the view that the threat of liability will make officials unduly timid in carrying out their official duties."

*Id*. (quoting *W.Va. Dep't of Health & Human Res. v. Payne*, 231 W.Va. 563, 577, 746 S.E.2d 554, 568 (2013)).

According to petitioners, the DHHR's actions in concealing information from the circuit court constituted fraud such that qualified immunity does not apply. Specifically, petitioners argue that at the time of the petition's filing and M.I.D.'s subsequent removal from their home, the DHHR "knew . . . the true state of affairs but chose not to share that information with the court" and instead presented "a series of lies and misrepresentations" to the circuit court in the various petitions. We note, however, that the record does not support these assertions. Petitioners make much of the fact that the DHHR supposedly failed to alert the circuit court to the fact that M.I.D. was in petitioners' legal guardianship and did not reside in the parents' home. However, the initial petition clearly lists M.I.D.'s address as petitioners' address in Wetzel County. Moreover, the record shows that as early as the preliminary hearing held approximately four days after the first petition was filed, the DHHR informed the circuit court that "it intended to amend its petition to add [M.I.D.]'s legal guardians as adult respondents." Thereafter, the DHHR did, in fact, amend its petition to include petitioners as adult respondents. Contrary to petitioners' arguments on appeal about willful concealment of facts from the circuit court during the associated abuse and neglect proceedings, the record indicates that the DHHR presented accurate information to the circuit court throughout the proceedings.[4] Accordingly, petitioners have failed

---

[4]Petitioners additionally assert that respondents made "affirmative misrepresentations concerning jurisdictional issues" in their filings with the circuit court. As noted above, the abuse and neglect petitions against petitioners in the Circuit Court of Kanawha County were eventually dismissed for lack of jurisdiction, given that petitioners and M.I.D. resided in Wetzel County. While that order is not on appeal, it is important to note that the DHHR had at least a reasonable basis to assume that jurisdiction in Kanawha County was proper, given the uncontroverted evidence that M.I.D.'s parents, two of the named party abusers, lived in Kanawha County at the time the initial petition was filed. Pursuant to West Virginia Code § 49-6-1 (2012), "the department . . . may present a petition setting forth the facts to the circuit court in the county in which the . . . named party abuser resides. . . ." Accordingly, while petitioners were able to obtain dismissal of the petition for lack of jurisdiction, it does not appear that the DHHR misrepresented any jurisdictional issues before the circuit court in its pleadings.

to show that qualified immunity should not apply due to acts or omissions that were fraudulent, malicious, or otherwise oppressive.

Petitioners also argue on appeal that qualified immunity is inapplicable because the DHHR violated West Virginia Code §§ 49-6-1 and 49-6-9 (2012), which require, among other things, that they be served with the petition and notice of hearing and be "immediately notif[ied] . . . of the taking of [emergency custody] and the reasons therefore. . . ."[5] According to petitioners, the DHHR fraudulently induced them into bringing the child to the initial preliminary hearing so that he could be taken into the DHHR's custody without any warning or explanation and in violation of the statutes quoted above.[6] Again, we find that the record does not support petitioners' position. While it is true that the DHHR failed to include petitioners as named respondents in the initial petition, petitioners admit that prior to taking physical custody of M.I.D., the DHHR informed them of the issues arising from the substantiated claims of abuse and neglect in petitioners' home and that they were taking M.I.D. into their custody pursuant to the circuit court's order.

While petitioners argue that the DHHR failed to consider documentation of their legal guardianship over M.I.D. before taking custody of the child, we find that their status in relation to M.I.D. was irrelevant to the fact that the DHHR believed that there was imminent danger to the child's well-being if left in petitioners' care. In short, consideration of petitioners' status as legal guardians did not preclude the filing of a petition for emergency custody in this matter. In regard to the substantiated abuse and neglect in their home, petitioners attack the veracity of those substantiations and argue that they were later overturned. Regardless of the eventual

---

[5]Petitioners also argue, without explanation, that the DHHR's "actions clearly violated the Wetzel County court order appointing [them] as M.I.D.'s guardians." It is unclear how petitioners believe the DHHR's actions violated the order in question, beyond the fact that the DHHR obtained emergency custody of the child upon allegations of abuse and neglect. We note, however, that a court order granting an individual legal guardianship over a child does not insulate that individual from emergency removal of the child upon evidence of imminent danger to the child's physical well-being.

Additionally, petitioners assert that respondents "violated numerous regulations of their own agency and spelled out in the Social Services Manual." However, petitioners fail to cite to a single regulation that they allege was violated. "[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State ex rel. Hatcher v. McBride*, 221 W.Va. 760, 766, 656 S.E.2d 789, 795 (2007) (quoting *State Dep't of Health v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995)). Accordingly, this argument will not be addressed on appeal.

[6]In support of their argument that they "knew nothing of the proceedings," petitioners assert on appeal that "to this day, [they] have never been personally served with any [p]etition." This assertion is unsupported by the record. While it is unclear whether personal service was achieved upon petitioners, it is undisputed that they had actual notice of the proceedings, as they filed a verified answer to one of the amended petitions and appeared for and participated in hearings after being named as respondents in the abuse and neglect proceedings.

outcome of the investigations into the conditions of petitioners' home, it is uncontroverted that, as the circuit court found, at the time of the petitions' filings "there existed at least three 'substantiated' findings of abuse/neglect against [petitioners]." Petitioners also argue that these substantiated findings of abuse and neglect were known to the DHHR when they obtained legal guardianship over M.I.D. in 2010 and that because the DHHR did not object to the child's placement at that time, it was somehow precluded from citing these substantiated findings as a basis for M.I.D.'s removal. However, we do not find this argument compelling, as the DHHR was permitted, in its discretion, to re-evaluate the appropriateness of petitioners' home as a placement for M.I.D. in light of its ongoing investigation into his best interests.

Ultimately, in arguing that the circuit court erred in granting respondents' motion for summary judgment, petitioners assert that the question of whether respondents' conduct was such that qualified immunity would not be applicable is one "for the jury to decide." We disagree, as this Court has previously held that "'the question of whether the constitutional or statutory right was clearly established is one of law for the court.'" *Crouch*, 240 W.Va. at __, 809 S.E.2d at 705 (quoting *Hutchison*, 198 W.Va. at 149, 479 S.E.2d at 659). Further,

> [t]o prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a "particularized showing" that a "reasonable official would understand that what he is doing violated that right" or that "in the light of preexisting law the unlawfulness" of the action was "apparent."

*Id.* (quoting *Hutchison*, 198 W.Va. at 149 n.11, 479 S.E.2d at 659 n.11). Here, the only statute petitioners can establish that the DHHR did not strictly follow is West Virginia Code § 49-6-1(b) (2012), requiring that the petition and notice of the preliminary hearing be served upon petitioners, given that they had custody of M.I.D. However, it is also apparent that the DHHR almost immediately recognized its mistake and informed the circuit court at the preliminary hearing, held four days after the petition's filing, that it intended to amend the petition to include petitioners as named respondents. Indeed, the DHHR then filed an amended petition to resolve its mistaken omission, and petitioners then participated in the proceedings as contemplated by the statues and rules governing child abuse and neglect proceedings. Accordingly, we find that petitioners cannot establish that the DHHR's mistake was such that qualified immunity should not apply.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 19, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment