# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**West Virginia Department of Health and Human Resources,**
**A West Virginia State Agency,**
**Defendant Below, Petitioner**

**v.)  No. 24-212** (Fayette County CC-10-2021-C-124)

**L.R. and A.R., his wife, and B.R., an infant by her parents**
**L.R. and A.R.,**
**Plaintiffs Below, Respondents**

## MEMORANDUM DECISION

The petitioner herein and defendant below, the West Virginia Department of Human Services ("DHS"),[1] appeals from an order entered March 18, 2024, by the Circuit Court of Fayette County. By that order, the circuit court denied the DHS's motion for summary judgment, finding that the respondents herein and plaintiffs below, parents, L.R. and A.R., and their child, B.R. (collectively, "the respondents"), are entitled to a jury trial to resolve genuine issues of material fact as to whether the DHS complied with its mandatory pre-adoption disclosure obligation under West Virginia Code § 48-22-401.[2] On appeal, the DHS asserts that the circuit court erred by ruling that the DHS's statutory obligation to disclose a child's medical history includes the duty to disclose the child's behavioral and psychological history and, further, that the circuit court erred by ruling that the DHS is not entitled to qualified immunity vis-à-vis the respondents' negligence claim. Upon a review of the parties' briefs and the appendix record, we conclude that the circuit court did not err in denying the DHS's motion for summary judgment and that disposition by memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

---

[1] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of the instant proceeding, the agency is now the DHS.

[2] The DHS is represented by counsel Chip E. Williams and Jared C. Underwood, and the respondents are represented by counsel Greg A. Hewitt and Anthony M. Salvatore.

1

The events giving rise to this appeal began in the early 2000s when the DHS received legal custody of C.R. during an abuse and neglect proceeding in which his biological parents' parental rights were terminated. A Mingo County family adopted C.R. but later voluntarily relinquished their parental rights to C.R. when he allegedly choked his biological sister who was residing in the same adoptive home; C.R.'s alleged actions led to his juvenile delinquency proceeding. Following this relinquishment, the DHS again received custody of C.R. and placed him in a group home in Fayette County. While he was in the DHS's custody, C.R. had five commitments to psychiatric hospitals as well as numerous stays in group residential care homes and emergency shelters and a psychological evaluation in which C.R.'s first adoptive mother reported that he had significant anger issues, exhibited inappropriate sexual behaviors, and engaged in self-harm behaviors.

L.R. and A.R. ("respondent parents") first met C.R. during church events when he was housed in Fayette County; C.R. was approximately fifteen years old. The respondent parents expressed interest in serving as a foster placement for C.R. and learned that he previously had been adopted. Because they had two young children, they asked their DHS caseworker and their Children's Home Society social worker about C.R.'s past history and whether he had exhibited any troublesome behaviors that they would need to address before bringing him into their family. However, the respondent parents allege that none of C.R.'s psychiatric or juvenile delinquency history was ever provided to them in response to their inquiries, although they were informed of a single disciplinary infraction while C.R. was housed at the Fayette County facility and his diagnoses of bipolar disorder and depression and associated medications. While C.R. was having in-home visits with the respondents' family, the respondent parents observed C.R. exhibit several displays of anger. The respondent parents also attended several status hearings with C.R. in Mingo County, but they claim they were told that these were routine check-in meetings scheduled by the circuit court, not that these hearings were related to C.R.'s juvenile delinquency proceeding.

Ultimately, the Children's Home Society approved the respondent parents as a therapeutic foster family and adoptive family, and the respondent parents entered into an adoption placement agreement with the DHS. On November 5, 2019, the circuit court entered its "Order of Adoption" whereby the respondent parents adopted C.R. The respondent parents allege that, after they adopted C.R., he exhibited violent behavior in the home and sexually abused their daughter, B.R., although C.R. denies these allegations and the associated juvenile charges have been dismissed.

In January 2022, the respondents filed the underlying complaint against the DHS in the Circuit Court of Fayette County asserting causes of action for negligence, misrepresentation, violation of statute (West Virginia Code § 48-22-401[3]), outrage, and various constitutional violations, and seeking damages. The DHS moved to dismiss the respondents' complaint based on qualified immunity. By order entered December 28, 2022, the circuit court partly granted the DHS's motion and dismissed the counts of the complaint stating claims for constitutional violations and damages generally, but the court denied the DHS's motion as to the complaint's

---

[3] See *infra* for the full text of West Virginia Code § 48-22-401.

remaining counts finding that the respondents had pled facts sufficient to overcome the DHS's motion to dismiss based on its assertion of qualified immunity.[4]

Thereafter, the DHS filed a motion for summary judgment, again asserting that it is immune from suit. By order entered March 18, 2024, the circuit court denied the DHS's motion for summary judgment. The court found that the DHS was not immune from suit because, during the underlying adoption proceedings, the DHS, as the entity having legal custody of C.R., had a non-discretionary, mandatory obligation to disclose C.R.'s medical history, including his behavioral and psychological history, to the respondent parents during the underlying adoption proceedings as required by West Virginia Code § 48-22-401. The court further ruled that because the DHS had this non-discretionary, mandatory duty, it could not assert qualified immunity in response to the respondents' negligence claim. Finally, the circuit court determined that the respondents had raised sufficient issues of fact to permit the case to proceed to a jury trial. From these rulings, the DHS now appeals to this Court.

The DHS presents this appeal from the circuit court's order denying its motion for summary judgment in which the DHS asserted qualified immunity. A court's order denying summary judgment is an interlocutory ruling that typically is not subject to appeal. *See* Syl. Pt. 8, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963) ("An order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable."). However, we have held that "[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009). *Accord* Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996). "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). We also review anew a circuit court's interpretation of a statute. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

On appeal to this Court, the DHS asserts two assignments of error. First, the DHS contends that the circuit court erred by determining that the statutory non-discretionary, mandatory medical history disclosure requirement includes the duty to disclose a child's behavioral and psychological history. Second, the DHS argues that the circuit court erred by not determining that the respondents' negligence claim was barred by the doctrine of qualified immunity.

At issue in both of these assignments of error is whether the DHS may assert the defense of qualified immunity in response to the respondents' claims. We have explained that "'[g]overnment officials performing *discretionary* functions are shielded from liability for civil

---

[4] The respondents later amended their complaint to add the Children's Home Society as a defendant, but it has since settled and is no longer a party to these proceedings.

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' Syllabus, in part, *Bennett v. Coffman*, 178 W. Va. 500, 361 S.E.2d 465 (1987)[, *holding limited by*, *State v. Chase Sec., Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992)]." *Robinson*, 223 W. Va. at 829, 679 S.E.2d at 661, Syl. Pt. 3 (emphasis added). *Accord* Syl. Pt. 11, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014); Syl. Pt. 4, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995). To determine whether the circuit court correctly determined that West Virginia Code § 48-22-401 establishes a mandatory, rather than a discretionary, duty to disclose the medical history of a child being placed for adoption, we must look to the language of the statute itself. *See Lowe v. Richards*, 234 W. Va. 48, 55, 763 S.E.2d 64, 71 (2014) ("In order to ascertain legislative intent, it is necessary to consider the wording of the statute at issue.").

The statute that the respondents claim the DHS violated by failing to provide C.R.'s full medical history to them during the underlying adoption proceedings is West Virginia Code § 48-22-401, which provides in full:

> Whenever a person delivers a child for adoption the person first receiving such child and the prospective adopting parent or parents shall be entitled to receive from such person a written recital of all known circumstances surrounding the birth, medical and family medical history of the child, and an itemization of any facts or circumstances unknown concerning the child's parentage or that may require further development in the form of an affidavit from the birth mother consistent with the provisions of section 22-502.

W. Va. Code § 48-22-401. During the underlying adoption proceedings, the DHS had legal custody of C.R. following the relinquishment of his Mingo County adoptive parents' parental rights. *See* W. Va. Code § 49-2-101(b) (authorizing the DHS "to accept the custody of children committed to its care by courts"). Therefore, the DHS, as C.R.'s legal custodian, was the "person [who] deliver[ed] a child[, C.R.,] for adoption." *See* W. Va. Code § 48-22-401. *See also* W. Va. Code § 48-22-301(d) (requiring, where "all persons entitled to parental rights of the child sought to be adopted are deceased or have been deprived of the custody of the child by law," that the "person having legal custody of the child at the time" of adoption consent thereto). The subsequent reference to "such person" in section 48-22-401 relates back to the "person [who] delivers a child for adoption," here, the DHS, and imposes a duty upon that person to provide the child's "medical . . . history" to "the person first receiving such child[, here, the Children's Home Society, as the child placing agency] and the prospective adopting parent or parents[, here, the respondents]."

The duty to provide the child's medical history is introduced by the directory term "shall." "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982). Moreover, "the Legislature's use of the word 'shall' in a statute also ordinarily indicates that the duty imposed is non-discretionary." *Freeland v. Marshall*, 249 W. Va. 151, 158, 895 S.E.2d 6, 13 (2023). Thus, "when an actor is directed to act by the word 'shall,' the actor is compelled to perform the required duty; the performance of such action is mandatory, and no discretion is afforded to the actor to

4

refuse said performance." *Foster Found. v. Gainer*, 228 W. Va. 99, 110, 717 S.E.2d 883, 894 (2011). In light of the foregoing authorities, we conclude that the circuit court did not err when it determined that West Virginia Code § 48-22-401 imposes a non-discretionary, mandatory duty on the DHS to provide C.R.'s medical history to the respondents and that, because this statutory duty is not discretionary, the DHS is not entitled to qualified immunity with respect to the respondents' claim alleging a violation of this statute. *See generally Robinson v. Pack*, 223 W. Va. at 829, 679 S.E.2d at 661, Syl. Pt. 3.

However, the statute does not define the term "medical history," and the DHS contends that the circuit court erred by ruling that "medical history" includes a child's behavioral and psychological history. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. Pt. 1, *Miners in Gen. Grp. v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by*, *Lee-Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982). The term "medical history" refers to "health history." *See Medical History*, Mosby's Medical Dictionary (9th ed. 2013). *See also Medical History* and *Medical Records*, Black's Law Dictionary (10th ed. 2014) (defining "medical history" by referencing "medical records" and defining "medical records" as "[t]he documents that compose a medical patient's healthcare history"). In turn, "health history" encompasses "a collection of information obtained from the patient and from other sources concerning the patient's physical status as well as his or her psychological, social, and sexual function." *See Health History*, Mosby's. *See also Healthcare*, Black's (defining "healthcare" as "the services provided, usu. by medical professionals, to maintain and restore health").

We also glean guidance as to the meaning of statutory terms from statutes that address the same body of law as the statute under consideration. "'Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.' Syllabus Point 3, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958)." Syl. Pt. 3, *Murrell B. v. Clarence R.*, 242 W. Va. 358, 836 S.E.2d 9 (2019). In the adoption context, the Legislature has created a voluntary adoption registry whereby a child's health history may be recorded for future reference by the adopted child. This portion of the Code defines "health history" as "a comprehensive report of the child's health status at the time of placement for adoption and medical history, including neonatal, psychological, physiological and medical care history." W. Va. Code § 48-23-207. From these definitions, it is apparent that the term "medical history of the child" in section 48-22-401 includes the child's behavioral, i.e., social, and psychological history. Therefore, the DHS had a non-discretionary, mandatory duty pursuant to West Virginia Code § 48-22-401 to provide C.R.'s medical history, including his behavioral and psychological history, to the respondents during the underlying adoption proceedings. Accordingly, we affirm the circuit court's rulings on this point.[5]

---

[5] We render no decision as to whether the DHS complied with its statutory non-discretionary, mandatory duty to disclose C.R.'s medical history to the respondents during the underlying adoption proceedings. Rather, we agree with the circuit court's assessment that whether the DHS fulfilled its duty in this regard presents a disputed question of fact for a jury to decide.

The DHS additionally assigns error to the circuit court's determination that the doctrine of qualified immunity does not bar the respondents' negligence claim. We previously have held that,

> [i]n the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the *discretionary* judgments, decisions, and actions of the officer.

*Clark*, 195 W. Va. at 274, 465 S.E.2d at 376, Syl. Pt. 6 (emphasis added). In their amended complaint, the respondents allege that the DHS had a "duty to provide accurate information concerning their adopted child [C.R.] and his prior history of sexual abuse on others, and his history of violence" and that the DHS was negligent because it breached this duty to the respondents. As discussed in the foregoing analysis, the referenced duty is a non-discretionary, mandatory duty imposed by West Virginia Code § 48-22-401 and requires the disclosure of a child's "medical history," which includes his/or behavioral and psychological history, by the "person [who] delivers a child for adoption[.]" *See id.* The child's custodian presenting the child for adoption, here, the DHS, has no discretion as to whether to comply with this statutory mandate because it is couched in mandatory terms. Consequently, there would be no "discretionary judgments, decisions, [or] actions" of the DHS to which qualified immunity could attach to insulate the DHS from the respondents' negligence claim. *See Clark*, 195 W. Va. at 274, 465 S.E.2d at 376, Syl. Pt. 6, in part. Therefore, we conclude that the circuit court did not err in ruling that the doctrine of qualified immunity does not bar the respondents' claim of negligence.

Accordingly, we find no error in the circuit court's order denying the DHS's motion for summary judgment, and we affirm the March 18, 2024, order entered by the Circuit Court of Fayette County.

Affirmed.

**ISSUED:** June 1, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Gerald M. Titus III

**DISQUALIFIED:**

Justice Thomas H. Ewing

6