IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 18-1076

_____

FILED
November 20, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

THE WEST VIRGINIA REGIONAL JAIL AND CORRECTIONAL FACILITY
AUTHORITY,
Defendant Below, Petitioner

V.

THE ESTATE OF CODY LAWRENCE GROVE,
Plaintiff Below, Respondent

_____

AND

_____

No. 18-1083

_____

JOSHUA DAVID ZOMBRO,
Defendant Below, Petitioner

V.

THE ESTATE OF CODY LAWRENCE GROVE,
Plaintiff Below, Respondent

_____

Appeals from the Circuit Court of Berkeley County
The Honorable Laura V. Faircloth, Judge
Civil Action No. 17-C-529

REVERSED AND REMANDED WITH INSTRUCTIONS

_____

Submitted: September 16, 2020
Filed: November 20, 2020

Matthew R. Whitler
Anthony J. Delligatti
Pullin, Fowler, Flanagan, Brown
& Poe, PLLC
Martinsburg, West Virginia
Attorneys for the West Virginia
Regional Jail and Correctional Facility
Authority

James W. Marshall, III
Bailey & Wyant, PLLC
Martinsburg, West Virginia
Michael W. Taylor
Bailey & Wyant, PLLC
Charleston, West Virginia
Attorneys for Joshua David Zombro

Paul G. Taylor
Martinsburg, West Virginia
Attorney for the Estate of
Cody Lawrence Grove

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.    "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."  Syllabus point 1, *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

2.    "When a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo.*"  Syllabus point 4, in part, *Ewing v. Board of Education of County of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998).

3.    "'In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.'  Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995)."  Syllabus point 7, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

4. "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In [the] absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus point 11, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

**Jenkins, Justice:**

Petitioners, the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCA") and Joshua David Zombro ("Mr. Zombro") (collectively "Petitioners"), appeal the circuit court's November 19, 2018 orders denying their respective motions to dismiss Respondent's, the Estate of Cody Lawrence Grove ("the Estate"), amended complaint for failure to state a claim upon which relief can be granted. On appeal, Petitioners contend that the circuit court erred in failing to apply a heightened pleading standard for qualified immunity; failing to find both Petitioners are qualifiedly immune; failing to find the WVRJCA is a state agency; and failing to dismiss the claim against the WVRJCA for punitive damages. In contrast, the Estate asserts that the circuit court correctly applied a notice pleading standard; neither Petitioner is protected from suit by the qualified immunity doctrine under the facts of this case; and the issues of whether the WVRJCA is a state agency and subject to punitive damages are irrelevant and not properly before this Court.[1]

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred by incorrectly failing to apply the heightened pleading standard applicable to cases implicating qualified immunity; failing to appropriately consider whether qualified immunity applied to shield

---

[1] The Estate does concede, for the purposes of this appeal, that the WVRJCA is a state agency and is not subject to punitive damages.

1

Petitioners from suit; failing to determine whether the WVRJCA is a state agency; and failing to address punitive damages. Consequently, we reverse the November 19, 2018 orders of the circuit court and remand this case to the circuit court with instructions to consider the allegations of the amended complaint pursuant to the heightened pleading standard applicable to cases implicating qualified immunity; determine whether the claims against Petitioners are barred by the doctrine of qualified immunity; and ascertain whether punitive damages are applicable in this matter.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This appeal arises from the suicide of Cody Lawrence Groves ("Mr. Groves") on December 8, 2015, during his incarceration at the Eastern Regional Jail ("ERJ"), which is operated by the WVRJCA. On December 7, 2017, the Estate filed a complaint against the WVRJCA and Mr. Zombro, individually, and in his official capacity as a former correctional officer of the WVRJCA.[2] The complaint alleges that, while he was incarcerated at the ERJ, Mr. Groves was on suicide watch, medical watch, or some other heightened watch and that the WVRJCA's and/or Mr. Zombro's failure to provide Mr. Groves with a reasonably safe confinement facility caused Mr. Groves' death. Moreover, while the complaint is wholly devoid of the factual circumstances surrounding

---

[2] We note that this proceeding was originally before the Honorable Judge Debra McLaughlin.

Mr. Groves' death, the Estate contended that there was "[a] failure of staff to intervene on [Mr. Groves'] behalf" and that the WVRJCA negligently hired, trained, supervised, employed, and retained Mr. Zombro. Based on these limited allegations, the Estate asserted seven causes of action against the WVRJCA and/or Mr. Zombro: (1) deprivation of constitutional rights, (2) negligent supervision, (3) negligent training and retention, (4) negligent and intentional infliction of emotional distress, (5) general negligence, (6) wrongful death, and (7) injunctive relief.

Subsequently, on January 15, 2018, Mr. Zombro moved to dismiss the Estate's complaint for failure to state a claim upon which relief could be granted. In particular, Mr. Zombro argued that the complaint "contains no allegations of material facts regarding acts or omissions by [Mr.] Zombro to support a cause of action against him." He further contended that the complaint was "riddled with conclusory allegations and legal conclusions without any factual support[.]" Additionally, Mr. Zombro asserted that he was entitled to complete dismissal of all claims based on qualified immunity.[3] Following Mr. Zombro's motion, the WVRJCA filed its own motion to dismiss the Estate's complaint on January 25, 2018. The WVRJCA moved to dismiss on numerous grounds, including lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief could be granted. Specifically, the WVRJCA asserted that the claims were barred by

---

[3] Mr. Zombro also argued for the dismissal of the Estate's state constitutional law claims and contended that he is immune from punitive damages.

3

sovereign immunity, qualified immunity, lack of pre-suit notice, lack of standing to enjoin, and lack of sufficient facts to put it on notice of the claims asserted against it. In addition, the WVRJCA claimed that it was not subject to punitive damages and also argued for the dismissal of the Estate's state constitutional law claims.

The Estate opposed the motions to dismiss and also moved for leave to amend its original complaint to add PrimeCare Medical of West Virginia, Inc., as another defendant. On April 12, 2018, the circuit court issued an order granting the WVRJCA's motion to dismiss. The circuit court noted that its standards of review included the "heightened pleading standard," because this was a matter involving qualified immunity issues and the general West Virginia Rule of Civil Procedure 12(b)(6) standard of review. While the circuit court acknowledged that the WVRJCA's motion to dismiss raised numerous grounds, it further recognized that the issues of sovereign immunity, pre-suit notice to the State, and standing "are jurisdictional issues that must be decided prior to evaluating the sufficiency of the [c]omplaint." The circuit court found that "[d]espite [the Estate's] claim to the contrary, the [WVRJCA] is a state agency under the administration of the West Virginia Department of Military Affairs and Public Safety. W. Va. Code § 5F-2-1(i)(10)[.]" The circuit court further found that the Estate had "failed to plead that an insurance policy of [the WVRJCA] covers any alleged damages, or that [the Estate] is only seeking damages up to the limits of that policy." Accordingly, the circuit court concluded that the WVRJCA was "immune from suit pursuant to Section 35, Article VI of the West Virginia Constitution." Furthermore, the circuit court ruled that, as a state agency, the

4

WVRJCA was entitled to pre-suit notification pursuant to West Virginia Code section 55-17-3 and that the Estate had failed to demonstrate any compliance with the statutory pre-suit notice requirements. Therefore, the circuit court found that it was without jurisdiction and could not address the other grounds raised in the WVRJCA's motion to dismiss. The circuit court dismissed the complaint without prejudice as to the WVRJCA. On April 25, 2018, the circuit court granted the Estate's motion to amend the complaint.[4]

Following the circuit court's April 25th order, the Estate filed an amended complaint on May 9, 2018.[5] The amended complaint named not only the WVRJCA and Mr. Zombro as defendants, but it also added an additional defendant, PrimeCare Medical of West Virginia, Inc. ("PrimeCare"). The Estate's amended complaint asserted the same causes of action alleged in its initial complaint. Generally, the facts alleged in support of the various causes of action in the amended complaint include that Mr. Grove "was on 'suicide watch[,]' [] 'medical watch,' and/or under a heightened level of monitoring and/or supervision[,]" and that "[d]efendants knew or should have known Cody Grove was addicted to heroin and a possible suicide risk." The Estate further asserted that

---

[4] It does not appear in the record we have before us that the circuit court ruled on Mr. Zombro's separately filed motion to dismiss prior to or after the complaint was amended. During a subsequent hearing, Mr. Zombro suggested that he believed that the motion was mooted by the court allowing the Estate to amend its original complaint. Accordingly, it appears as though the case was continuing against Mr. Zombro at the time the circuit court granted the Estate leave to file an amended complaint.

[5] Shortly after the amended complaint was filed, this case was reassigned to the Honorable Judge Laura Faircloth.

> [d]efendants owed a duty . . . to provide a reasonably safe confinement facility[;] a duty to properly hire, train, retain, and supervise its correctional officers as well as ensure that inmates were kept safe and secure, especially those under heightened monitoring[;] and had a legal obligation to do so pursuant to 95 CSR 1-14.1 and 95 CSR 1-14.9.5, 7, 11 and 12.

Moreover, the Estate contended that the WVRJCA "otherwise negligently breached its duty to properly hire, train and supervise [Mr. Zombro;] negligently retained [Mr. Zombro] in its employ[;] and negligently failed to protect Plaintiff from a violation of his constitutional, statutory and common law rights and protections." The Estate further alleged that Mr. Zombro "was to perform regular checks of Cody Grove's welfare. Upon information and belief, [Mr. Zombro] missed at least one (1) of those safety checks allowing Cody Grove to hang and kill himself. This was a violation of law, regulation, Cody Grove's legal rights and Defendants' own policies and procedures."

Subsequently, Mr. Zombro moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted. In particular, Mr. Zombro argued that he was qualifiedly immune from suit; that the Estate asserted unrecognized causes of action; and, for those claims asserted against him in his official capacity, that the Estate failed to provide pre-suit notice. The Estate filed a response in opposition asserting that it had pleaded sufficient facts to place Mr. Zombro on notice of the claims, Mr. Zombro did not have immunity, the violations of various constitutional rights are actionable, and Mr. Zombro was not entitled to pre-suit notice.

6

The WVRJCA filed an answer to the Estate's amended complaint and a cross-claim against PrimeCare, asserting that it would be entitled to contribution and/or indemnification from PrimeCare should a judgment be rendered in the Estate's favor. Contemporaneously, the WVRJCA also filed a motion to dismiss the Estate's amended complaint for failure to state a claim.[6] In its motion to dismiss, the WVRJCA again made various arguments as to why the matter should be dismissed. The WVRJCA contended that the Estate lacked standing to enjoin it because the Estate's purported injuries could not be redressed by an injunction; that it was qualifiedly immune from suit; that the Estate failed to sufficiently plead facts to put it on notice of the Estate's claims in counts I, IV, and VII of the amended complaint; that it was not subject to punitive damages; and that a stand-alone cause of action for violation of the State constitution is not a recognized claim.[7]

---

[6] The certificate of service on the motion to dismiss indicates that it was filed on January 26, 2018. However, from a review of the record and the docket sheet it appears that the motion was actually filed on the same day as the answer and cross-claim, *i.e.* June 26, 2018.

[7] We note that the WVRJCA attached several medical records of Mr. Groves to its motion to dismiss. The general rule is that "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment . . . ." Syl. pt. 3, in part, *Riffle v. C.J. Hughes Constr. Co.*, 226 W. Va. 581, 703 S.E.2d 552 (2010) (quotations and citations omitted). However, certain exceptions to this general rule have been recognized. Exhibits attached to a motion to dismiss that are not acknowledged by the circuit court do not require the motion to be converted to a summary judgment motion. West Virginia Rule of Civil Procedure 12(b) allows a court to exclude matters outside the pleadings. Specifically, Rule 12(b)(7) provides that

> [i]f, on a motion asserting the defense numbered (6) to
> dismiss for failure of the pleading to state a claim upon which
> relief can be granted, matters outside the pleading are

The Estate filed a response in opposition asserting that it had pleaded sufficient facts to place the WVRJCA on notice of the claims, it had standing to seek an injunction, the WVRJCA did not have immunity, the WVRJCA is subject to punitive damages, and the violations of various State constitutional rights are actionable. The WVRJCA filed a reply on July 25, 2018.

At an August 27, 2018 hearing, without giving any significant opportunity to the parties to argue the substance of the motions to dismiss, the circuit court informed the parties that it intended to deny the motions to dismiss, stating that "I want to see what the

---

presented to *and not excluded by the court*, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W. Va. R. Civ. P. 12(b)(7) (emphasis added). Accordingly, "[t]he mere fact that documents are attached to a Rule 12(b)(6) motion to dismiss does not require converting the motion to a Rule 56 motion for summary judgment." Louis J. Palmer & Robin J. Davis, *Litigation Handbook* § 12(b)[8][g], at 417 (5th ed. 2017). This is because courts deciding whether a motion to dismiss should be converted to a motion for summary judgment "have broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). *See also* Palmer & Davis, *supra* §12(b)[8][g], at 418 (observing that "as long as a court does not rely on extraneous documents, even though the documents may have been read, a court is not required to convert a Rule 12(b)(6) motion to a Rule 56 motion"). In the present matter, a clear reading of the order denying the WVRJCA's motion to dismiss demonstrates that the circuit court did not rely on any of the medical record documents attached to the WVRJCA's motion to dismiss.

8

development of the evidence is before I make [*sic*] grant any motion to dismiss."[8]  In a September 11, 2018 order, the circuit court acknowledged receipt of proposed orders denying the WVRJCA's and Mr. Zombro's respective motions to dismiss prepared by the Estate.  The circuit court stated that it would "review these orders and modify them as necessary."  Subsequently, the circuit court entered its separate orders denying the WVRJCA's and Mr. Zombro's motions to dismiss on November 19, 2018.[9]  In its order denying the WVRJCA's motion to dismiss, the circuit court recognized that the motion to dismiss raised five grounds for dismissal, including that the WVRJCA is protected from

---

[8] During the hearing, counsel for the WVRJCA asked the court whether it intended to deny the entirety of the motions because the court had not addressed all of the issues during the hearing.  Specifically, the following exchange occurred:

> Mr. Delligatti [Counsel for the WVRJCA]:  I don't think you addressed all of the – I think that addressed the issue of qualified immunity whether the claim was stated but there are also issues about whether a state agency could be subject to punitive damages, *et cetra*, I mean are you saying that –
>
> The Court:  It's to all aspects.

[9] PrimeCare also filed a motion to dismiss the Estate's amended complaint on a different issue, which the circuit court denied by a third separate order.  PrimeCare then filed a petition for a writ of prohibition with this Court.  Finding that the Estate's failure to comply with the pre-suit notice requirements of the Medical Professional Liability Act deprived the circuit court of subject matter jurisdiction, this Court determined that the circuit court erred by failing to dismiss the Estate's claims against PrimeCare. Accordingly, we granted the writ of prohibition, vacated the circuit court's order denying PrimeCare's motion to dismiss, and remanded the case for entry of an order dismissing the Estate's claims against PrimeCare.  *See generally State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019).

PrimeCare is not a party to this appeal and has not appeared before the Court in this matter.

suit by qualified immunity and is not subject to punitive damages. In its order denying Mr. Zombro's motion to dismiss, the circuit court recognized that the motion to dismiss raised three grounds for dismissal, including protection from suit by qualified immunity. Regarding the standard of review, the circuit court found in both orders that the Estate's "burden . . . is a relatively light one." (Citation omitted). Furthermore, the circuit court concluded in both orders that the Estate "has set forth a sufficient basis to deny [the WVRJCA's and Zombro's] Motion to Dismiss" and that the Estate "has set forth . . . sufficient facts to put Defendants on notice of the nature of Plaintiff's claims. The Plaintiff has provided sufficient clarity so that the Defendants can understand the nature of Plaintiff's factual claims and legal theories of the action."[10] The WVRJCA and Mr. Zombro now appeal the circuit court's respective orders denying their motions to dismiss.

## II.

## STANDARD OF REVIEW

The WVRJCA and Mr. Zombro ask this Court to review the circuit court's denial of their respective motions to dismiss pursuant to West Virginia Rule of Civil Procedure 12(b)(6).[11] In Syllabus point 1 of *West Virginia Board of Education v. Marple*,

---

[10] The circuit court also made findings relative to PrimeCare's motion to dismiss and its arguments concerning the lack of a screening certificate of merit, but those findings are not recounted here because they do not concern issues germane to this appeal.

[11] West Virginia Rule of Civil Procedure 12(b)(6) allows a defendant in a civil action to file a motion to dismiss a claim against him/her for "failure to state a claim upon which relief can be granted."

10

236 W. Va. 654, 783 S.E.2d 75 (2015), we held: "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."

Having established that this appeal is properly before this Court, we turn to the appropriate standard of review. We previously have held that "[w]hen a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo.*" Syl. pt. 4, in part, *Ewing v. Bd. of Educ. of Cty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998). Furthermore, "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff [ ], and its allegations are to be taken as true." *Marple*, 236 W. Va. at 660, 783 S.E.2d at 81 (quotations and citation omitted). "[D]ismissal for failure to state a claim is only proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint." *Id.* (citation omitted). However, a plaintiff's complaint must, "at a minimum[,] . . . set forth sufficient information to outline the elements of his [or her] claim," and, "in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff." *Id.* (quotations and citations omitted). With these standards in mind, we now turn to the parties' respective arguments.

11

## III.

## DISCUSSION

The WVRJCA raises four assignments of error in this appeal. First, the WVRJCA asserts that the circuit court erred by applying a notice pleading standard rather than a heightened pleading standard to a motion to dismiss based on qualified immunity. Second, the WVRJCA contends that the circuit court erred by failing to find the WVRJCA is qualifiedly immune. Third, the WVRJCA argues that the circuit court erred to the extent that it found the WVRJCA is not a state agency. Fourth, the WVRJCA asserts that the circuit court erred by not dismissing the claim against it for punitive damages.

Similarly, Mr. Zombro asserts two assignments of error on appeal. First, Mr. Zombro argues that the circuit court erred by failing to use the framework for analysis required by this Court in *Marple*, 236 W. Va. 654, 783 S.E.2d 75, when qualified immunity is raised. Second, Mr. Zombro contends that the circuit court erred by denying his motion to dismiss because he is entitled to qualified immunity from the claims raised in the Estate's First Amended Complaint due to the Estate failing to establish that he engaged in any act or omission related to the suicide of the Estate's decedent that established the violation of a clearly established right. However, because we resolve this matter by finding that the circuit court failed to apply the proper pleading standard and conduct any analysis as to Petitioners' claims of qualified immunity, we need not reach the remaining assignments of error asserted by Petitioners.

12

### A. Heightened Pleading Standard

Both the WVRJCA and Mr. Zombro argue that the circuit court incorrectly applied a notice pleading standard rather than a heightened pleading standard. We agree. Regarding qualified immunity and a "heightened pleading standard," this Court previously has stated:

> We believe that in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff. *See Schultea v. Wood,* 47 F.3d 1427 (5th Cir. 1995) (*en banc*) (a § 1983 action); *see generally Parkulo v. West Virginia Board of Probation and Parole*, [199 W. Va. 161, 483 S.E.2d 507] [(1996)]. To be sure, we recognize the label "heightened pleading" for special pleading purposes for constitutional or statutory torts involving improper motive has always been a misnomer. A plaintiff is not required to anticipate the defense of immunity in his complaint, *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923-24, 64 L. Ed. 2d 572 (1980), and, under the West Virginia Rules of Civil Procedure, the plaintiff is required to file a reply to a defendant's answer only if the circuit court exercises its authority under Rule 7(a) to order one. We believe, in cases of qualified or statutory immunity, court ordered replies and motions for a more definite statement under Rule 12(e) can speed the judicial process. Therefore, the trial court should first demand that a plaintiff file "a short and plain statement of his complaint, a [statement] that rests on more than conclusion[s] alone." *Schultea v. Wood*, 47 F.3d [1427,] [] 1433 [5th Cir. 1995]. Next, the court may, on its own discretion, insist that the plaintiff file a reply tailored to an answer pleading the defense of statutory or qualified immunity. The court's discretion not to order such a reply ought to be narrow; where the defendant demonstrates that greater detail might assist an early resolution of the dispute, the order to reply should be made. Of course, if the individual circumstances of the case indicate that the plaintiff has pleaded his or her best case, there is no need to order more detailed pleadings. If the information contained in the pleadings is sufficient to justify the case proceeding further, the early motion to dismiss should be denied.

*Hutchison v. City of Huntington*, 198 W. Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996) (emphasis added). *Accord Portee v. City of Mount Hope*, No. 17-0546, 2018 WL 3203157, at *2 (W. Va. June 29, 2018) (memorandum decision) ("'[I]n civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.' *Hutchison*, 198 W. Va. at 149, 479 S.E.2d at 659.'"); *W. Va. Dep't of Educ. v. McGraw*, 239 W. Va. 192, 196 n.5, 800 S.E.2d 230, 234 n.5 (2017) ("In *Hutchison v. City of Huntington*, 198 W. Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996), we stated that when a defendant's answer pleads the defense of governmental immunity, the circuit court should order the plaintiff to file a reply tailored to the defendant's immunity defense. . . . Ms. McGraw's original complaint provided scant detail of the basis of her constitutional tort claim against the DOE, and consequently, she filed two amended complaints in the course of the proceedings before the circuit court. Had the circuit court required Ms. McGraw to file a reply to the DOE's motion to dismiss pleading qualified immunity, it might have assisted an early resolution to this dispute."); *W. Va. Bd. of Educ. v. Croaff*, No. 16-0532, 2017 WL 2172009, at *3 (W. Va. May 17, 2017) (memorandum decision) ("'In civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.' *Hutchison*, 198 W. Va. at 149, 479 S.E.2d at 659."); *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 60, 783 S.E.2d 75, 81 (2015) ("Furthermore, 'in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.' *Hutchison*, 198 W. Va. at 149, 479 S.E.2d at 659."); *Marcus v. Holley*, 217 W. Va. 508, 517, 618 S.E.2d 517, 526 (2005) ("In *Hutchison v. City of Huntington*,

14

198 W. Va. 139, 479 S.E.2d 649 (1996), this Court emphasized the enhanced burden upon a plaintiff in certain types of cases, explaining that 'in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.' 198 W. Va. at 149, 479 S.E.2d at 659."). Accordingly, it is well-established that matters involving qualified immunity, such as the case presently before us, require a type of "heightened pleading" standard.

In the matter *sub judice*, both the WVRJCA and Mr. Zombro filed motions to dismiss asserting various reasons for dismissal, including being protected from suit by qualified immunity. However, the circuit court's order makes absolutely no mention of a "heightened pleading" standard with regard to the Petitioners' qualified immunity claims.[12] Instead, the circuit court, through its respective orders, merely states that the Estate

> has set forth in its First Amended Complaint sufficient facts to put [the WVRJCA and Mr. Zombro] on *notice* of the nature of [the Estate's] claims. The [Estate] has provided sufficient clarity so that [the WVRJCA and Mr. Zombro] can understand the nature of [the Estate's] factual claims and legal theories of the action.

(Emphasis added). From this language, it is clear that the circuit court applied the notice pleading standard applicable to civil actions, generally, and not the heightened pleading standard required in cases involving qualified immunity. Accordingly, we find that the

---

[12] On the other hand, the circuit court's order, authored by the original circuit court judge assigned to the matter, on the first motion to dismiss filed by the WVRJCA did apply a heightened pleading standard.

15

circuit court erred by failing to apply the heightened pleading standard in this particular matter and reverse its ruling in this regard.

### B. Failure to Conduct Qualified Immunity Analysis

Petitioners also claim that the circuit court failed to conduct a proper qualified immunity analysis. As this Court explained in *Hutchison*, "[t]he very heart of the [qualified] immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case." *Id.* at 148, 479 S.E.2d at 658. We also have recognized that

> a ruling on qualified immunity should be made early in the proceedings so that the expense of trial is avoided where the defense is dispositive. First and foremost, qualified immunity is an entitlement not to stand trial, not merely a defense from liability. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) ("The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

*Maston v. Wagner*, 236 W. Va. 488, 498, 781 S.E.2d 936, 946 (2015). Therefore, because we consistently have acknowledged that qualified immunity is not just a defense, but rather "an entitlement not to stand trial," *id.*, rulings on qualified immunity claims should be made as early in the proceedings as possible. The uniqueness of qualified immunity and its provision of total immunity from suit rather than just a defense is an important reason for the aforementioned heightened pleading. *See Xiao v. Rodriguez*, No. A18-0646, 2019 WL 1983488, at *8 (Minn. Ct. App. May 6, 2019), *review denied* (Aug. 6, 2019), *cert. denied sub nom. Jun Xiao v. Regents of the Univ. of Minn.*, __ U.S. __, 140 S. Ct. 851, 205

16

L. Ed. 2d 464 (2020), *reh'g denied*, __ U.S. __, 140 S. Ct. 1553, 206 L. Ed. 2d 387 (2020)

("The 'allegations in a complaint *may* provide the basis for denying an immunity defense.' *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 318 (Minn. App. 1997) (emphasis in original), *aff'd in part*, 582 N.W.2d 216 (Minn. 1998).   Cases implicating immunity, however, are subject to a somewhat heightened pleading standard.  *See Elwood v. Rice Cty.*, 423 N.W.2d 671, 676 (Minn. 1988). That is, plaintiffs 'should supply in their complaints or other supporting materials greater factual specificity and particularity than is usually required.'  *Id.* (quotation omitted).  And, immunity should be determined 'at the earliest possible stage to shield officers from disruptive effects of broad-ranging discovery and effects of litigation.'  *Id.* at 675.").   Accordingly, Mr. Zombro argues that "[t]he purpose of requiring 'heightened pleading' by a plaintiff permits a framework by which a circuit court may engage in an analysis to determine whether a plaintiff has a sufficient claim to overcome the qualified immunity."  We agree.

The issue of qualified immunity has come before this Court on countless occasions.  Consequently, we have developed a significant body of law in order to determine whether a state agency, a state employee, or both are entitled to be protected from suit by the doctrine of qualified immunity.  The doctrine of qualified immunity insulates a state actor from suit where the requisite conditions have been satisfied.  *See generally W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).  Therefore, a necessary prerequisite to a qualified immunity analysis is an initial determination of whether the party seeking qualified immunity protection is a state actor.

17

This Court has established numerous steps that must be examined in order to find whether qualified immunity protections apply in a particular case. For example, we have held that,

> "[i]n the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

Syl. pt. 7, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. We further have held that,

> [t]o the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In [the] absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. pt. 11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. As such, whenever a defendant raises the issue of qualified immunity in a motion to dismiss, the circuit court must look to our qualified immunity body of law and follow the steps this Court expressly has outlined to make the determination of whether qualified immunity applies under the specific circumstances of that particular case. Specifically, these steps include whether: (1) a state agency or employee is involved; (2) there is an insurance contract waiving the defense of qualified immunity; (3) the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.* would apply; (4) the matter involves

18

discretionary judgments, decisions, and/or actions; (5) the acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive; and (6) the State employee was acting within his/her scope of employment. *See generally A.B.*, 234 W. Va. 492, 766 S.E.2d 751.

In the matter now before us, as stated above, both the WVRJCA and Mr. Zombro filed motions to dismiss asserting that each is protected from suit by the doctrine of qualified immunity. Accordingly, the circuit court was required to engage in an examination of the amended complaint, using the requisite heightened pleading standard, to determine whether the Estate sufficiently alleged the WVRJCA and/or Mr. Zombro had committed discretionary governmental acts or omissions in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or whether they had engaged in conduct that was otherwise fraudulent, malicious, or oppressive. However, as evidenced by its final orders, the circuit court failed to undertake such an analysis.

Instead, as discussed above, the circuit court simply found the Estate "has set forth in its First Amended Complaint sufficient facts to put [the WVRJCA and Mr. Zombro] on notice of the nature of [the Estate's] claims." The orders are devoid of any factual findings other than (1) that Mr. Groves' suicide occurred on December 8, 2015, while in the custody of the WVRJCA and under the direct supervision of Mr. Zombro and

19

(2) a listing of all the reasons upon which Petitioners based their respective motions to dismiss. There is absolutely no examination or analysis of our well-established qualified immunity framework.[13] At no point, during either the hearing or in the circuit court's orders, did the circuit court examine whether the Petitioners were state actors[14] or that the alleged acts or omissions of Petitioners were discretionary functions. Neither did the circuit court even attempt to identify a clearly established statutory or constitutional right or law of which a reasonable person would have known. Furthermore, the circuit court did not consider whether any alleged conduct by the WVRJCA or Mr. Zombro, if taken as true, evidences an intent by either or both Petitioners to violate a clearly established statutory or constitutional right or whether such actions or inactions otherwise could be found to be

---

[13] The circuit court's respective orders also contained certain factual inaccuracies. Specifically, the orders identify Mr. Zombro as an employee of PrimeCare rather than an employee of the WVRJCA. Furthermore, the circuit court orders discuss an issue relating to PrimeCare which has no bearing on the issues in the subject motions to dismiss.

[14] In rendering its decision on the WVRJCA's motion to dismiss the initial complaint, below, the circuit court specifically stated that the WVRJCA is a state agency and that ruling was not challenged. Furthermore, the Estate has now conceded the WVRJCA's state agency status. Therefore, the circuit court's ruling in this regard has become the law of the case and is not amenable to further challenge in the case *sub judice*. *State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W. Va. 696, 702 n.14, 619 S.E.2d 209, 215 n.14 (2005) ("The law of the case doctrine provides that a prior decision in a case is binding upon subsequent stages of litigation between the parties in order to promote finality."). However, the circuit court did not make a definitive determination as to whether Mr. Zombro was a state employee during the underlying proceedings. Therefore, as part of its instructions on remand, the circuit court should consider whether Mr. Zombro was a state employee during the relevant time period before it applies the additional analysis to determine whether Mr. Zombro, himself, can claim qualified immunity from suit.

20

fraudulent, malicious, or oppressive.[15]  Therefore, in addition to its previously recognized error in failing to apply the correct heightened pleading standard in this matter where the doctrine of qualified immunity has been implicated, the circuit court further erred by failing to conduct any semblance of an analysis regarding qualified immunity.[16]  As such, this failure, also, is grounds for reversal of the circuit court's orders and requires proceedings on remand to thoroughly consider Petitioners' claims of qualified immunity.[17]

---

[15] Moreover, the Estate submitted a proposed order, to which both the WVRJCA and Mr. Zombro objected, but which, interestingly, undertook a qualified immunity analysis.  However, the circuit court did not adopt in full or even in part any of that portion of the proposed order.  Instead, as discussed above, the circuit court failed to engage in any qualified immunity analysis whatsoever.

[16] Additionally, the WVRJCA urges this Court to adopt the federal plausibility pleading standard as set forth in the cases of *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  However, we repeatedly have declined to adopt this standard, and we again decline to do so in the case *sub judice*. *See, e.g.*, *Hoover v. Moran*, 222 W. Va. 112, 116 n.3, 662 S.E.2d 711, 715 n.3 (2008) (per curiam); *Highmark W. a., Inc. v. Jamie*, 221 W. Va. 487, 491 n.4, 655 S.E.2d 509, 513 n.4 (2007) (per curiam).

[17] As discussed herein, when undertaking the qualified immunity analysis, the circuit court also must necessarily make a finding as to whether state actors are involved.  Accordingly, we remind the circuit court if it finds that a government agency as defined in West Virginia Code section 55-17-2(2) (eff. 2002) has been named as a defendant in this case, it must then consider whether an award of punitive damages is permitted in light of the prohibition of West Virginia Code section 55-17-4(3) (eff. 2002) directing that "[n]o government agency may be ordered to pay punitive damages in any action."

## IV.

## CONCLUSION

For the reasons set forth above, the November 19, 2018 orders of the Circuit Court of Berkeley County are reversed, and this case is remanded with instructions to appropriately consider the heightened pleading standard applicable to cases implicating qualified immunity, whether punitive damages are applicable in this matter, and appropriate consideration of whether the case is barred by the doctrine of qualified immunity.

Reversed and Remanded with Instructions.