IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

**FILED**
**October 5, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 17-0148

STATE OF WEST VIRGINIA ex rel. ERP ENVIRONMENTAL FUND, INC.,
Petitioners

v.

HONORABLE WARREN D. MCGRAW, Judge of the Circuit Court of
Wyoming County, West Virginia; WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION; AUSTIN CAPERTON, in his role as
Cabinet Secretary of the West Virginia Department of Environmental
Protection; AVARY H. & BETTY JO BAILEY; JASON A. & RONCHESKI
BAILEY; NEWMAN & KATHERINE BROWN; ALGIE D. & KATHERINE
COOK; ALGIE R. & PEGGY ANN COOK; DENNIS L. COOK, JR. &
MICHELLE COOK; DENNIS L. COOK, SR. & BRENDA K. COOK;
WILLIAM C. & REGINA COOK; DONNA FRALEY; MAYBETH
FRALEY; WESTLEY & JUDY FRALEY; DOYLE LEE & PHYLLIS
JOHNSON; GLEN & MARY JOHNSON; ELIZABETH L. KENNEDY;
WILLIAM D. & JENNY LAFFERTY; MICHAEL E. MARCUM;
HELEN M. MCGINNIS; ONNIE & VIRGINIA PAYNTER; EARL R.
PELPHREY; LARRY & BECKY REED; EVERETT & FREDA SMITH;
WILLIAM L. & JESSICA N. STEPP; JACQUELYN A. WHITLEY;
BILLY RAY WILLARD; TEDDY & DOROTHY WYKLE,
Respondents

_____

Petition for Writ of Prohibition

WRIT GRANTED

_____

Submitted: September 12, 2017
Filed: October 5, 2017

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
John J. Meadows, Esq.
Peter J. Raupp, Esq.
Devon J. Stewart, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for Petitioners

Jason Wandling, Esq.
West Virginia Department of
 Environmental Protection,
 Office of Legal Services
Charleston, West Virgnia
Counsel for DEP and Austin Caperton

Kevin W. Thompson, Esq.
David R. Barney, Jr., Esq.
Thompson Barney
Charleston, West Virginia
Counsel for Individual Respondents

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS

1.  "A *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus."  Syl. Pt. 1, *Harrison Cty. Comm'n v. Harrison County Assessor*, 222 W.Va. 25, 658 S.E.2d 555 (2008).

2.  "Mandamus lies to require the discharge by a public officer of a nondiscretionary duty."  Syl. Pt. 3, *State ex rel. Greenbrier Cty. Airport Auth. v. Hanna*, 151 W.Va. 479, 153 S.E.2d 284 (1967).

3.  A finding by the West Virginia Department of Environmental Protection of contamination, diminution, or interruption to an owner's water supply is a prerequisite to the issuance of any water replacement relief under the West Virginia Surface Coal Mining and Reclamation Act, West Virginia Code §§ 22-3-1 to -38 (2014 & Supp. 2017).

LOUGHRY, Chief Justice:

The ERP Environmental Fund, Inc. ("ERP") seeks a writ of prohibition in connection with the February 25, 2016, order of the Circuit Court of Wyoming County compelling the West Virginia Department of Environmental Protection ("DEP") to direct Eastern Associated Coal, LLC ("Eastern")[1] to provide emergency drinking water, temporary potable water, and ultimately permanent water replacement to the individually-named respondents (hereinafter referred to as the "Residents") pursuant to the provisions of the West Virginia Surface Coal Mining and Reclamation Act ("SMCRA").[2] As grounds for seeking relief, ERP argues that the circuit court's order is unenforceable due to both procedural and substantive infirmities.[3] Upon our careful review of this matter, we find that the circuit court lacked the authority to direct the DEP to obtain water replacement for the Residents on the record developed in this case. Accordingly, the writ of prohibition requested by ERP is hereby granted.

---

[1]ERP is the current permit holder subject to the DEP's directives.

[2]*See* W.Va. Code §§ 22-3-1 to -38 (2014 & Supp. 2017). We use the acronym "SMCRA" to comport with its federal analogue, the Surface Mining Control and Reclamation Act. *See* 30 U.S.C. §§ 1201 to -1328 (2012).

[3]Specifically, ERP asserts that the Residents failed to exhaust their administrative remedies and failed to join an indispensable party to the underlying mandamus proceeding. Additional grounds raised by ERP include the absence of a non-discretionary act; the primary jurisdiction doctrine; improper venue; and a bankruptcy stay.

1

## I. Factual and Procedural Background

On November 4, 2011, the Residents filed an administrative claim with the DEP in connection with their allegation that a reclaimed water impoundment (the "Impoundment") on property subject to a permit held by Eastern[4] had contaminated their well water in violation of SMCRA.[5] After two years of investigating the complaint, DEP Environment Resource Specialist, III, Dustin C. Johnson authored a report dated April 4, 2013, stating:

> In conclusion, there is a lack of evidence that water emanating from the 0001983 permit is causing detrimental environmental damage to the hydrologic balance in which the alleged groundwater contaminated wells are located. The sampling results from outlet 013, as well as the DMRs, illustrate a history of compliance from this site.

The Residents refiled their administrative claim with the DEP on April 13, 2013. On May 22, 2013, the DEP conducted a "fourth and final follow up to the original complaint" filed by the Residents in November 2011. As a result of that final inquiry, the DEP terminated the investigation of the Residents' complaint after finding no evidence that the permitted area–the Impoundment–was the contaminating source of the Residents' water supply. Opting not to appeal the final decision terminating their complaint,[6] the Residents

---

[4]*See supra* note 1.

[5]The claims were asserted under West Virginia Code §§ 22-3-24 to -25 (2014).

[6]*See* W.Va. Code § 22-3-17(e) (2014).

2

chose instead to file yet another complaint with the DEP on May 22, 2015, in which they asserted the same facts as the earlier two administrative complaints.[7]

On September 16, 2015, the Residents filed a mandamus action in the Circuit Court of Wyoming County through which they sought to require Eastern to provide emergency, temporary, and permanent water replacement pursuant to West Virginia Code § 22-3-24 (2014). The Residents named the DEP and its cabinet secretary[8] as respondents but did not include Eastern or ERP as respondents to the mandamus proceeding.[9]

On December 2, 2015, the circuit court held an evidentiary hearing on the Residents' mandamus petition. Neither Eastern nor ERP participated in the hearing.[10] Through its ruling issued on February 25, 2016, the circuit court directed the DEP to "require Eastern to provide emergency water and temporary water replacement to Petitioners

---

[7]The record before us does not indicate the status of that complaint.

[8]Randy Huffman was named as the DEP Cabinet Secretary; that position is now held by Austin Caperton.

[9]The reason for the non-inclusion of Eastern was the pending bankruptcy proceeding that involved Eastern and its parent company Patriot Coal Corporation that was filed on May 12, 2015. *See In re: Patriot Coal Corp. et al.*, Case No. 15-32450 (E.D. Bankr. E.D. Va.).

[10]Counsel for the Residents emailed a copy of the mandamus petition and the order setting the evidentiary hearing to counsel for Eastern/ERP on October 15, 2015. Counsel for Eastern/ERP attended the December 2, 2015, hearing but did not intervene or otherwise participate in the proceeding.

[Residents] until such time as Eastern can establish a permanent water supply for them." In making its ruling, the circuit court discarded the testimony and findings of the DEP's witness, Dustin C. Johnson, preferring instead to rely on the testimony of the Residents' expert witness, D. Scott Simonton.[11] Citing Dr. Simonton's opinion that "the presence of the hydrogen sulfide gas is an indicator of Eastern's mining impact on Petitioners' [Residents'] water sources, even though the level of sulfate concentration may not have exceeded any applicable standard," the circuit court *sua sponte* determined that the Residents' "evidence of contamination demonstrates that Eastern's mining operations impacted their sources of water."

In compliance with the circuit court's directive to secure water replacement for the Residents, the DEP issued two water replacement orders[12] to Eastern under authority of West Virginia Code § 22-3-24 and tendered the orders to ERP for compliance purposes.[13] As a non-party to the mandamus action, ERP struggled to identify the forum in which to challenge these orders–orders that were not even issued against ERP[14]–which involved the

[11]Dr. Simonton is an environmental engineering professor at Marshall University. As a non-party to the mandamus proceeding, ERP lacked the opportunity to challenge Dr. Simonton's expertise to testify and to cross-examine him with regard to his findings.

[12]Those orders were issued on March 4 and 25, 2016.

[13]*See supra* note 1.

[14]When a third water replacement order was issued on October 16, 2016, ERP was finally identified as the permit holder.

4

expenditure of significant financial resources.[15]  Seeking to resolve this matter in the administrative setting in which it was initiated, ERP filed an appeal with the West Virginia Surface Mine Board (the "Board") requesting that the Board vacate the DEP orders.  As grounds for its request for relief from the Board, ERP asserted that the circuit court's order "was both unlawful and directly contrary to the WVDEP's prior investigations."

During a June 16, 2016, hearing before the Board, the DEP provided testimony concerning its decision to terminate the Residents' complaint.  Dustin Johnson explained: "I didn't find any evidence that any mining–any permitted mining impact was contaminating the groundwater regime in this area."  He opined further that "[s]ulfates are generally used by us in [sic] an indication that there has been some mining contamination if you have highly elevated sulfates."  Here, the "sulfates were particularly low in most well samples, indicating very little influence from mine drainage."  While acknowledging that "ERP has a compelling argument that cannot be overlooked" with regard to a denial of due process or lack of jurisdiction, the Board concluded that it lacked "the power to review a decision [issued] by a circuit court."  Following the Board's dismissal of the appeal, ERP petitioned this Court for a writ of prohibition.

---

[15]In its Notice of Appeal filed with the West Virginia Surface Mine Board, ERP represented those costs to include $26,000 per month for delivery services to twenty-six residential locations and a one-time equipment cost for the purchase and installation of twenty-six 1,100 gallon water tanks at $4,000 per tank.  The final phase that would require permanent water replacement was estimated to cost approximately $7,000,000.

5

## II. Standard of Review

As this Court pronounced in syllabus point one of *Harrison County Commission v. Harrison County Assessor*, 222 W.Va. 25, 658 S.E.2d 555 (2008), "[a] *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus." In conducting this plenary review, our task is to consider "whether the legal prerequisites for mandamus relief are present." *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996). In this case, our review is subject to the principle that "[m]andamus lies to require the discharge by a public officer of a nondiscretionary duty." Syl. Pt. 3, *State ex rel. Greenbrier Cty. Airport Auth. v. Hanna*, 151 W.Va. 479, 153 S.E.2d 284 (1967). Bearing these precepts in mind, we now consider whether the circuit court's issuance of a writ of mandamus was proper.

## III. Discussion

As a starting point to our review of the circuit court's award of replacement water to the Residents, we observe that this type of extraordinary relief is governed by the following requirements: "To invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy." Syl. Pt. 2, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981). As evidence of their entitlement to the relief granted by the circuit

6

court, the Residents point to their right as citizens to enforce the provisions of SMCRA. *See* W.Va. Code § 22-3-25 (2014).

The Legislature clearly has authorized the bringing of citizen suits to compel compliance with SMCRA. Under West Virginia Code § 22-3-25, "any person having an interest which is or may be adversely affected may commence a civil action in the circuit court of the county to which the surface-mining operation is located . . . ." Such a suit may be instituted "[a]gainst the director, division, surface mine board or appropriate division employees, . . . *where there is an alleged failure of the above to perform any act or duty under this article which is not discretionary*." *Id.* at § 22-3-25(a)(2) (emphasis supplied).

In their attempt to identify a non-discretionary duty that was not performed in this matter, the Residents reference the mandatory duty for the DEP director under West Virginia Code § 22-3-17 (2014) to "cause a notice of violation to be served upon the operator or operator's authorized agent" for non-compliance with any of the requirements of SMCRA, its legislative rules, or specified permit conditions. The Residents alleged that Eastern violated the provision of SMCRA that required it to "[m]inimize the disturbances to the prevailing hydrologic balance at the mine site and in associated off-site areas." W.Va. Code § 22-3-13(b)(10); W.Va. C.S.R. § 38-2-14.5. Given that the DEP director is statutorily required to act in the instance of non-compliance with SMCRA, the Residents submit that

7

DEP's non-issuance of a violation notice constitutes the requisite non-discretionary act to warrant mandamus relief.

What the Residents overlook in their zeal to locate the necessary unfulfilled duty by the DEP is the discretion necessarily imposed upon the DEP to determine in the first instance whether there has been a violation of SMCRA, the supporting regulations, or a permit. When the Residents filed their administrative complaint pursuant to SMCRA in 2011, the DEP undertook an investigation to determine whether the Impoundment was the source of the alleged groundwater issues. At the end of that investigation, which included ground water sampling and site visitation, DEP specialist Dustin Johnson determined that the Impoundment was not "contaminating the groundwater regime in this area." Based on the specific results obtained from the water testing, the DEP terminated the complaint after determining that the permitted area was not the source of the Residents' water issues.[16]

In its order granting relief, the trial court included the following finding:

> According to Mr. Johnson, there was nothing to connect the exceedances to a violation. Mr. Johnson explained that, after consulting with inspectors and others, he believed that the abandoned slate dump adjacent to Eastern's impoundment was the cause of the water standard exceedances, not anything

---

[16]In his April 4, 2013, report, Mr. Johnson acknowledged a possible source of the water contamination was the "un-reclaimed pre-SMCRA refuse dump located to the east of the impoundment."

8

related to Eastern's permit, including the impoundment. Mr. Johnson also did not believe there was any evidence of seepage from the impoundment which would contaminate the Petitioners' [Residents'] well water.

Discarding the legislative authority expressly reposed in the DEP to reach this conclusion, the trial court decided that the DEP's decision to terminate the Residents' complaint was made "in complete abrogation of all of the scientific evidence uncovered by the sampling and testing events conducted in the area."

The right to institute a citizens suit under SMCRA for water replacement is premised upon a finding that the citizens' water supply "has been affected by contamination, diminution or interruption proximately caused by the surface mining operation." W.Va. Code § 22-3-24(b); *see* W.Va. Code § 22-3-24(e). In this case, the predicate finding by the DEP of contamination specifically linked to the permitted area is missing. Absent a finding of contamination by DEP, there is no statutory basis for the issuance of a notice of violation. *See* W.Va. Code § 22-3-17. Only if the DEP had failed to issue a notice of violation in the face of unmistakable evidence of water contamination associated with the Impoundment, could the Residents succeed on their theory that the DEP failed to perform a non-discretionary duty under SMCRA. *See id.* But, as the record makes clear, that was not the case here.

9

Citing the testimony of the Residents and their expert witness, the circuit court supplanted the DEP's finding of no contamination with its diametric conclusion: "In this case, Petitioners' [Residents'] evidence of contamination demonstrates that Eastern's permitted mining operations impacted their sources of water. The contamination emanating from Eastern's permitted impoundment negatively impacted Petitioners' ability to use their well water safely for domestic purpose." Sidestepping the issue raised by the DEP at the mandamus proceeding with regard to the Residents being unable to demonstrate "a clear and indisputable right to the issuance of the writ,"[17] the circuit court simply declared that the Residents' right to water replacement is clear under SMCRA "if there is evidence that the permitted mine contaminated their groundwater." And then the circuit court proceeded to create the predicate finding of contamination by cherry picking from the evidence adduced in this case.

Our reading of the legislative scheme at issue makes clear that a finding by the DEP of contamination, diminution, or interruption to an owner's water supply is a

---

[17]Despite its clear objections to the Residents' entitlement to mandamus relief during the proceedings below, the DEP fully complied with the circuit court's mandamus directives. When questioned during oral argument, the DEP stated that the agency's position regarding the lack of contamination from the permitted area has never changed. Accordingly, we find the DEP's decision to support the Residents' position on appeal rather puzzling. It is one thing to respect a circuit court's ruling, but quite another to adopt a wholly inconsistent position. And, given the DEP's unwavering position with regard to the lack of a SMCRA violation, this course change is not only baffling but suggests an abrogation of the agency's duties to enforce the laws of this state.

prerequisite to the issuance of any water replacement relief under SMCRA.[18]  *See* W.Va.

Code § 22-3-24.[19]  Not only did the circuit court lack the authority to supply the requisite

finding of water contamination necessary to grant any water replacement relief under

SMCRA but it further lacked the authority to grant relief in mandamus predicated on the

DEP's failure to perform a non-discretionary duty.  As discussed above, the DEP had a duty

to issue a notice of violation only upon its finding of a specific violation of SMCRA.  *See*

W.Va. Code § 22-3-17.  But as the record reveals, the DEP never found any evidence that

SMCRA had been violated by Eastern, as alleged in the Residents' complaint.  *See supra*

note 17.

The petitioners have amply demonstrated that the prerequisites for mandamus

relief are not present in this case.  As the submitted record makes evident, the DEP did not

fail to perform a non-discretionary duty.  *See Hanna*, 151 W.Va. 479, 153 S.E.2d 284, syl.

pt. 3.  Absent that critical element, the circuit court lacked the authority to direct the DEP

---

[18]While the enforcement of SMCRA's water replacement rights is permitted in circuit court, we find no basis for concluding that the Legislature authorized the circuit court to usurp the DEP's authority with regard to making the pivotal finding of "contamination, diminution or interruption to an owner's water supply."  W.Va. Code §22-3-24 (b), (c).  The integral involvement of the DEP both with regard to making that necessary initial finding and then with regard to overseeing the water replacement supply during the two-year period prescribed by statute is clear.  *See, e.g.,* W.Va. Code § 22-3-24(h) (discussing DEP director's authority regarding discontinuation of water replacement service).

[19]The statute goes so far as to create a rebuttable presumption of causation upon a DEP inspector's finding of contamination in certain instances.  *See* W.Va. Code § 22-3-24(c).

to compel Eastern to supply the Residents with emergency, temporary, and permanent water replacement supplies. Given this fatal impediment to the issuance of a writ of mandamus, we find no need to address the additional grounds for relief set forth by ERP.[20] Furthermore, this Court wishes to make clear that we are not deciding the issue of whether the Residents' water is contaminated. That issue is not before us. Our limited inquiry in this case was to determine whether the circuit court had the necessary grounds to compel water replacement to the Residents under the provisions of SMCRA. *See* W.Va. Code § 22-3-24. It did not.

## IV. Conclusion

Based on the foregoing, the writ of prohibition sought by the petitioners is granted to prevent enforcement of the writ of mandamus issued by the Circuit Court of Wyoming County against the West Virginia Department of Environmental Protection on February 25, 2016.

Writ granted.

---

[20]*See supra* note 3.