IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0063

_____

FILED

**March 16, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
Defendant Below, Petitioner

v.

DREMA DOTSON,
DENVER ALLEN HUNT,
CONNIE LESTER,
WOODROW KIRK, and
JOHNNY LOCKHART,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of McDowell County
The Honorable Edward J. Kornish, Judge
Civil Action No. 16-C-96-K

REVERSED AND REMANDED

_____

Submitted: February 10, 2021
Filed:  March 16, 2021

John P. Fuller, Esq.
Brent D. Benjamin, Esq.
Daniel T. LeMasters, Esq.
Jeffrey M. Carder, Esq.
Bailey & Wyant, PLLC
Charleston, West Virginia
Counsel for Petitioner

Kevin W. Thompson, Esq.
David R. Barney, Jr., Esq.
Thompson Barney
Charleston, West Virginia

Stephen P. New, Esq.
Amanda J. Taylor, Esq.
The Law Office of Stephen P. New
Beckley, West Virginia
Counsel for the Respondents

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.     "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court."  Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002).

2.     "A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."  Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009).

3.     "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine.  Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition." Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

4.     "In the absence of an insurance contract waiving the defense,  the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq*., and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments,

i

decisions, and actions of the officer." Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

5.     "'Unless the applicable insurance policy otherwise expressly provides, a State agency or instrumentality, as an entity, is immune under common-law principles from tort liability in W. Va. Code § 29-12-5 actions for acts or omissions in the exercise of a legislative or judicial function and for the exercise of an administrative function involving the determination of fundamental governmental policy.' Syl. Pt. 6, *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996)." Syl. Pt. 8, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

6.     "'The common-law immunity of the State in suits brought under the authority of W. Va. Code § 29-12-5 (1996) with respect to judicial, legislative, and executive (or administrative) policy-making acts and omissions is absolute and extends to the judicial, legislative, and executive (or administrative) official when performing those functions.' Syl. Pt. 7, *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996)." Syl. Pt. 9, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

7.     "To determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts

or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions. To the extent that the cause of action arises from judicial, legislative, executive or administrative policy-making acts or omissions, both the State and the official involved are absolutely immune pursuant to Syl. Pt. 7 of *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996)." Syl. Pt. 10, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

8.      "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syl. Pt. 11, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

**WOOTON, Justice:**

The Petitioner West Virginia Department of Environmental Protection ("DEP") appeals the December 30, 2019, order entered by the Circuit Court of McDowell County, West Virginia, denying its motion for summary judgment on qualified immunity grounds. On appeal, the DEP contends that the circuit court erred as a matter of law in denying it summary judgment.[1] After careful review of the briefs, the arguments of the parties, the appendix record, and the applicable legal authority, we find that the DEP is entitled to qualified immunity. We therefore reverse the circuit court's order and remand the case for entry of an order granting the DEP summary judgment, thereby dismissing the action against it.

## I. Facts and Procedural Background

On June 5, 2014, severe flooding of Bull Creek occurred in McDowell County, West Virginia. The respondents, plaintiffs below,[2] Drema Dotson, Denver Allen

---

[1] The DEP also alleged that the circuit court erred as a matter of law in denying its motion for summary judgment under the public duty doctrine. During oral argument, however, the DEP recognized that the public duty doctrine was not properly before the Court, stating that the only reason it raised the issue on appeal was due to the circuit court's conflation of qualified immunity with the public duty doctrine. In light of the DEP's concession, and because we resolve this case on qualified immunity grounds, we decline to address this issue.

[2] The respondents also sought class certification, which was denied by the circuit court based on their failure to satisfy the "numerosity" and "commonality" requirements

Hunt, Connie Lester, Woodrow Kirk, and Johnny Lockhart (referred to collectively as "the respondents") are residents of the Bull Creek area and suffered damages to personal and real property as a result of the flooding.

On August 19, 2016, the respondents filed suit[3] against Twin Star Mining, Inc.[4] ("Twin Star") and the DEP, claiming that the property damages they suffered due to the flooding along Bull Creek were caused by the negligence of those entities. As against Twin Star, the respondents alleged in their second amended complaint[5] that Twin Star owns and operates Bull Creek Surface Mine No. 45 which is situated atop the Bull Creek and Trap Fork Watershed. The respondents averred that the surface mining operation, which was operating under Permit Nos. S-4020-95 and S-4011-97 issued by the DEP, was negligently and improperly designed by Twin Star and that Twin Star "failed to limit storm

under West Virginia Rule of Civil Procedure 23(a). The circuit court's decision regarding class certification is not the subject of this appeal.

[3] The respondents asserted causes of action for trespass to property and chattels, private and public nuisance, negligent infliction of emotional distress, property damage, and prima facie negligence against Twin Star. They asserted causes of action for "simple and gross negligence" and violations of West Virginia Surface Coal Mining and Reclamation Act ("SCMRA"), W. Va. Code § 22-3-1 to -38 (2014 & Supp. 2020), against both Twin Star and the DEP. Additionally, they sought injunctive relief against the DEP pursuant to the "citizen suit" provision of SCMRA, West Virginia Code § 22-3-25(a)(2).

[4] Twin Star reached a confidential settlement with the respondents and was dismissed from the litigation, as set forth in the circuit court's Settlement Order entered May 9, 2019.

[5] The respondents filed a complaint, an amended complaint, and a second amended complaint. The second amended complaint was filed pursuant to an agreed order entered on April 20, 2018.

2

water runoff during the mining and post-mining to pre-mining levels at the Bull Creek Surface Mine No. 45," causing the respondents' damages.

As against the DEP, [6] the respondents' allegations fell into two categories of acts or omissions. First, the respondents alleged that the DEP was negligent when it failed to enforce the provisions of SCMRA by issuing Twin Star the permits to operate Bull Creek Mine No. 45 based upon designs that failed to comport with the SCMRA requirements. Second, they alleged that the DEP was negligent by allowing Twin Star to violate the provisions of SCMRA "without issuing Notices of Violation[.]"[7] In that regard, they alleged that the DEP "had duties to monitor the mining operations at Bull Creek Surface Mine No. 45 and enforce applicable rules, regulations, statutes, and/or permits which caused the flood complained of herein." The respondents further alleged that the DEP's "acts or omissions . . . violated their mining permits" and certain "requirements of SCMRA[,]" causing injury to them. They alleged that the DEP was negligent in its "failure

---

[6] The DEP is the governmental entity which is responsible for enforcing the requirements of SCMRA. *See generally* W. Va. Code § 22-3-1 to -38. We note that certain statutes contained within SCMRA were amended by the Legislature in 2017 and 2018 after the respondents instituted action against the DEP; however, none of the statutory amendments impact our decision.

[7] Presumably the alleged stormwater water runoff and drainage issues made against Twin Star are the basis of the respondents' allegations that the DEP negligently granted Twin Star the permits to operate its Bull Creek Surface Mine No. 45 "which did not meet the requirements of SCMRA[,]" as well as their allegations that DEP was negligent in allowing Twin Star to violate SCMRA without issuing Notices of Violation. However, the respondents neither connect the allegations made against Twin Star to the DEP nor do they allege any specific regulatory or statutory violations against the DEP in that regard.

3

to discharge non-discretionary duties relating to enforcement of mine permit S-4011-97 [and S-4040-95] for the reasons expressed herein but primarily overlooking obvious violation[s] of permit, regulation and law." Finally, in their request for injunctive relief, the respondents alleged, in reliance on West Virginia Code § 22-3-25(a)(2),[8] that the DEP "failed to perform its non-discretionary duties[,]" including failing to issue Notice of Violations and failing to execute its non-discretionary duty when it released the bond for permit S-4020-95.

In conjunction with the allegations contained in the second amended complaint, the respondents provided reports from two experts, Jack Spadaro, a mine safety and health/environmental consultant, and John Eichenberger, an expert in hydrology and

---

[8] West Virginia Code § 22-3-25(a)(2) provides, in relevant part:

> (a) Except as provided in subsection (b) of this section, any person having an interest which is or may be adversely affected may commence a civil action in the circuit court of the county to which the surface-mining operation is located on the person's own behalf to compel compliance with this article:
>
> . . . .
>
> (2) Against the director, division, surface mine board or appropriate division employees, to the extent permitted by the West Virginia constitution and by law, where there is alleged a failure of the above to *perform any act or duty under this article which is not discretionary*.

(Emphasis added).

engineering. Both experts indicated in their respective reports that DEP had issued numerous Notices of Violation to Twin Star prior to the flooding event on June 5, 2015. Specifically, in discussing the flooding, Mr. Spadaro stated that in response to citizen complaint investigations the DEP had issued thirty-eight Notices of Violation for Twin Star's "repeated violations related to failure to protect the hydrologic balance and failure to comply with drainage control standards[,]" as well as for the "failure to protect off-site areas from material damage." Despite the issuance of these Notices of Violation, Mr. Spadaro found that the DEP did not do enough:

> The W.Va. Department of Environmental Protection also failed in its duty to protect the public. The DEP did not ensure that adequate erosion and drainage control structures were in place prior to June 5, 2014. Although Twin Star Mining, Inc. had failed to comply with state standards regarding protection of the hydrologic balance, DEP did not take decisive action to ensure compliance. The W.Va. Department of Environmental Protection allowed the mine to continue operating and did not require the company [to] correct the defective drainage control systems that created the hazards. These conditions led directly to the flooding of June 5, 2014 and were a significant contributing factor in regard to the severity of the flood damage.

Mr. Eichenberger also discussed the number of Notices of Violation issued by the DEP to Twin Star, but offered no opinions as to any acts or omissions on the part of the DEP. Instead, the expert focused upon Twin Star's conduct, stating that

> [t]he Twin Star Mine was required to provide all sufficient and accurate data for the permit area to the WVDEP to allow the regulatory authority to complete a cumulative hydrologic impact assessment (CHIA) of the mine site and adjacent areas. The Twin Star Mine failed to provide adequate and accurate information regarding the surface water hydrology to allow the regulatory authority to complete an accurate CHIA.

5

He further opined that

> [Twin Star's] mining practices in conjunction with the local topography and historic mining operations within the Bull Creek Watershed have increased the risk of flooding and associated damages to locations downgradient of the mine. I observed that the Twin Star Mine failed to adequately maintain the site storm water conveyance system and did not complete contemporaneous reclamation activities and other requirements set forth in site permits (WVDEP Permit S401196 and WVNPDES Permit WV1018582) and Legislative Rule 38-2 et. al.. [sic] In addition the WVDEP cited the Twin Star Mine on numerous occasions for failure to follow the permit and regulatory requirements. Based on these documented conditions, it is plausible that the damage that occurred to plaintiff's property during the June 5, 2014 flood was the direct result of the defendant's activities. This question of fact can be answered for all class members by developing a storm water run-off model and associated calculations.

The DEP moved for dismissal of the respondents' second amended complaint on the basis of qualified immunity and the public duty doctrine. However, after a hearing, the circuit court held that motion in abeyance until discovery on these issues had been completed. Once discovery was completed, the DEP filed separate motions for summary judgment against each respondent on March 11, 2019, asserting both the public duty doctrine and qualified immunity. It argued that all of the respondents' allegations involved discretionary functions, and that under the doctrine of qualified immunity, a state agency cannot be held liable for negligent performance of a discretionary duty. The DEP maintained that while it has a nondiscretionary duty to enforce SCMRA, the manner in which it enforces the law is discretionary. Conversely, the respondents maintained that the DEP was not entitled to qualified immunity, arguing that the DEP breached its

6

nondiscretionary duty to enforce SCMRA by failing to discover certain mining permit violations by Twin Star and failing to issue Notices of Violation.

After a hearing on October 16, 2019, the circuit court denied petitioner's motions. In regard to qualified immunity, the circuit court found there were remaining questions of fact as to whether petitioner's enforcement of SCMRA was discretionary or nondiscretionary. The circuit court stated that "[i]f Plaintiffs can prove their case, the WV DEP's enforcement actions violated clearly established law and qualified immunity would not apply. However, Plaintiffs' proof is disputed by WV DEP and material issues of fact exist as to whether Plaintiffs can prove their case." It is from this order that petitioner DEP appeals.

## II. Standard of Review

It is well-established that "[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002); *accord* Syl. Pt. 1, *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). Moreover, we have held that "[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009); *accord A.B.*, 234 W. Va. at 496, 766 S.E.2d at 755, Syl. Pt. 2. Finally,

7

> [t]he ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.

Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996); *accord A.B.*, 234 W. Va. at 496, 766 S.E.2d at 755, Syl. Pt. 3.

### III. Discussion

The only issue before the Court is whether the DEP was entitled to qualified immunity. In that regard, the respondents allege that the DEP was negligent "in detecting violations and issuing Notices of Violations to Twin Star Mining[,]" to which the DEP responds that while it does have a nondiscretionary duty to enforce SCMRA, the manner in which it enforces the law involves the exercise of judgment. As the DEP states, "[i]n other words, determining the manner in which it enforces provisions under SCMRA is a discretionary function. Because Plaintiffs are asserting negligence claims against WVDEP for its discretionary judgments, decisions, and actions, the WVDEP is entitled to summary judgment on the basis of qualified immunity." Conversely, the respondents argue that there are genuine issues of material fact regarding 1) whether their allegations against the DEP pertain to nondiscretionary or discretionary functions, and 2) whether the DEP's negligent acts or omissions violated clearly established law.

8

This Court has repeatedly found that the purpose of qualified immunity is

> to protect the public executive officer because . . . an officer should not be faced with the choice of doing his duty and being constantly faced with litigation for doing so. The public interest is that the official conduct of the officer not be impaired by constant concern about personal liability. As the *Restatement (Second) of Torts* comment quoted suggests, this concern need not always prevent the attachment of liability to the State:
>
>> "With respect to some government functions, the threat of individual liability would have a devastating effect, while the threat of governmental liability would not significantly impair performance."
>
> *Restatement (Second) of Torts* § 895D, cmt. j, in part (1979).

*Parkulo v. W. Va. Bd. of Prob. and Parole*, 199 W. Va. 161, 177-78, 483 S.E.2d 507, 523-24 (1996).[9] Further, we held in syllabus point six of *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995):

> In the absence of an insurance contract waiving the defense,[10] the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and

---

[9] *See* Syl. Pt. 9, in pertinent part, *Parkulo*, 199 W. Va. at 164, 483 S.E.2d at 510 ("In cases arising under W. Va. Code § 29-12-5, and in the absence of express provisions of the insurance contract to the contrary, the immunity of the State is coterminous with the qualified immunity of a public executive official whose acts or omissions give rise to the case. However, on occasion, the State will be entitled to immunity when the official is not entitled to the same immunity; in others, the official will be entitled to immunity when the State is not. The existence of the State's immunity . . . must be determined on a case-by-case basis.").

[10] There is no assertion by the respondents that the insurance policy at issue waives qualified immunity.

9

Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, *with respect to the discretionary judgments, decisions, and actions of the officer.*

(Footnote and emphasis added). Moreover, the Court held in syllabus points eight and nine of *A.B.*:

> "Unless the applicable insurance policy otherwise expressly provides, a State agency or instrumentality, as an entity, is immune under common-law principles from tort liability in W. Va. Code § 29-12-5 actions for acts or omissions in the exercise of a legislative or judicial function and for the exercise of an administrative function involving the determination of fundamental governmental policy." Syl. Pt. 6, *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996).

> "The common-law immunity of the State in suits brought under the authority of W. Va. Code § 29-12-5 (1996) with respect to judicial, legislative, and executive (or administrative) policy-making acts and omissions is absolute and extends to the judicial, legislative, and executive (or administrative) official when performing those functions." Syl. Pt. 7, *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996).

234 W. Va. at 497, 766 S.E.2d at 756, Syl. Pts. 8 and 9.

In ascertaining whether the DEP is entitled to qualified immunity, the Court first must determine whether the state agency is alleged to have engaged in a discretionary or nondiscretionary function. That analysis involves the following review:

> To determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of

10

determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions. To the extent that the cause of action arises from judicial, legislative, executive or administrative policy-making acts or omissions, both the State and the official involved are absolutely immune pursuant to Syl. Pt. 7 of *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996).

*A.B.*, 234 W. Va. at 497, 766 S.E.2d at 756, Syl. Pt. 10. If the Court determines that the

DEP's alleged acts or omissions are discretionary then the following analysis must occur:

To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

*A.B.*, 234 W. Va. at 497, 766 S.E.2d at 756, Syl. Pt. 11.

We begin by examining the nature of the DEP's alleged acts or omissions to

ascertain whether they are discretionary or nondiscretionary. First, the respondents allege

that the DEP was negligent in issuing Twin Star Permit Nos. S-4020-95 and S-4011-97

"based upon designs which did not meet the requirements of SCMRA." In that regard, the

relevant provisions of SCMRA provide that

the Legislature vests authority in the secretary of the Department of Environmental Protection to:

11

> (1) Administer and enforce the provisions of this article as it relates to surface mining to accomplish the purposes of this article;
>
> . . . .
>
> (3) Promulgate, administer and enforce rules pursuant to this article . . . .

W. Va. Code § 22-3-2 (c); *see also* W. Va. Code § 22-3-4 (providing, in part, that the DEP secretary "shall administer the provisions of this article relating to surface-mining operations[]" and "may" propose rules for promulgation, "[m]ake investigations or inspections necessary to ensure complete compliance with the provisions of this code[,]" conduct hearings and "[e]nforce the provisions of this article as provided in this article[.]"). Further, surface mining without a permit is prohibited by West Virginia Code § 22-3-8, and West Virginia Code § 22-3-9 sets forth the permit application requirements and contents. Once an application is complete and submitted to the DEP for approval, it is within the purview of the DEP to ascertain if the application comports with the statutory requirements. For example West Virginia Code § 22-3-18, which concerns the approval, the denial, the need to revise, or the prohibition of a permit, provides that "[n]o permit or significant revision of a permit may be approved *unless the applicant affirmatively demonstrates and the director finds* in writing on the basis of the information set forth in the application . . ." that the statutory requirements are met. *Id*. § 22-3-18 (b) (emphasis added).

12

The DEP contends that under SCMRA the process or function of determining whether the information contained in the application satisfies the statutory requirements necessarily involves an exercise of judgment, making it a discretionary function. We agree. According to the aforementioned statutes, in reviewing a permit application, it is within the exercise of the DEP's judgment whether a given permit sufficiently satisfies the statutory requisites of SCMRA.

Second, the respondents allege that the DEP failed to issue Notices of Violation when Twin Star allegedly committed violations of SCMRA. In this regard, West Virginia Code § 22-3-17 does provide that "[i]f any of the requirements of this article, rules promulgated pursuant thereto or permit conditions have not been complied with, the director *shall* cause a notice of violation to be served upon the operator or the operator's duly authorized agent." (Emphasis added). This Court recognized in *State ex rel. ERP Environmental Fund, Inc. v. McGraw*, 239 W. Va. 689, 805 S.E.2d 800 (2017), that "the DEP had a duty to issue a notice of violation only upon its finding of a specific violation of S[C]MRA." *Id*. at 694, 805 S.E.2d at 805. The Court further indicated that a finding that the DEP failed to perform this nondiscretionary duty was warranted only if the DEP had "unmistakable evidence" of a violation and failed to issue a Notice of Violation. *Id*. at 693, 805 S.E.2d at 804.

Our review of the allegations and the evidence demonstrates that the respondents' allegations and evidence failed to meet the standard of *ERP Environmental*.

13

Their experts acknowledge in their respective reports that the DEP heavily cited the Bull Creek Surface Mine No. 45, issuing thirty-eight Notices of Violation prior to the June 5, 2014, flood. The respondents now complain that the DEP missed or ignored additional perceived "violations" and was negligent in failing to detect and issue those Notices of Violation to Twin Star. As the DEP argues: "What Plaintiffs are really asserting in their Complaint is that the WVDEP failed to issue the Notices of Violation that the Plaintiffs in hindsight felt that it should have issued." We agree. Again, if there existed unmistakable evidence of a violation and the DEP turned a blind eye to that evidence and failed to issue a Notice of Violation, then the DEP would have violated its nondiscretionary statutory duty. *See id*. at 693, 805 S.E.2d at 804. But the respondents fail to allege or to produce evidence that this is what occurred in the instant case. Instead, their allegations all involve what they contend should be the process by which the DEP ferrets out and acts on evidence of alleged violations of SCMRA, which is a process that undeniably involves the exercise of judgment and is therefore discretionary in nature.[11]

---

[11] At this juncture we note that although the respondents allege in their count seeking "Injunctive Relief" (brought pursuant to West Virginia Code § 22-3-25(a)(2), which permits suits against the DEP to be brought by concerned citizen suits) that the DEP has failed "to perform its non-discretionary duties[,]" the mere allegation does not make it so. A careful review of the pleadings demonstrates that the respondents aver the same acts or omissions by the DEP as discussed *supra*, which we have found to be discretionary functions and not "non-discretionary" as averred by the respondents. As such, the respondents are afforded no right to injunctive relief under the statute based upon the allegations in their complaint. *See id*. and *supra* note 8; *see also ERP Env't*, 239 W. Va. at 693-94, 805 S.E.2d at 804-05 (finding the DEP did not fail to perform a nondiscretionary duty).

14

Having reached the conclusion that the DEP's alleged acts or omissions that are set forth in the respondents' second amended complaint fall within the category of discretionary functions, we now examine whether the respondents have demonstrated that the alleged negligent acts or omissions violated "clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive[.]" *A.B.*, 234 W. Va. at 497, 766 S.E.2d at 756, Syl. Pt. 11. In the absence of such a showing by the respondents, the DEP is immune from liability. *Id.*

First, in regard to the permit process, the respondents fail to cite to any specific provision of SCMRA, or corresponding West Virginia State Rule, to substantiate their general allegations that the DEP's acts or omissions violated SCMRA. Further, the respondents' experts do not cite to any violation arising from the DEP issuing the permits. Instead, the experts note *Twin Star's* failure to adhere to requirements under the permits and the actions of the DEP in citing Twin Star on "numerous occasions for failure to follow the permit and regulatory requirements." Our review of the appendix record reveals that the respondents have failed to establish any specific regulatory, statutory or constitutional violation by the DEP concerning its issuing of the permits involved in this case. *See generally* W. Va. Code § 22-3-9. The appendix record additionally reveals that the respondents have not offered any evidence or allegations that the DEP's acts or omissions "are otherwise fraudulent, malicious, or oppressive." *See A.B.*, 234 W. Va. at 497, 766 S.E.2d at 756, Syl. Pt. 11.

15

Second, concerning the DEP's failure to issue Notices of Violation to Twin Star, the respondents again have failed to allege, let alone show, any specific regulatory, statutory or constitutional violations by the DEP in the performance of its discretionary acts. The respondents also fail to plead, assert, or otherwise demonstrate that the DEP's alleged acts or omissions were "fraudulent, malicious, or oppressive." *Id.* The appendix record contains no evidence of clear violations of SCMRA by Twin Star which the DEP knew about and failed to address by issuing a Notice of Violation.[12] Conversely, both of the respondents' experts noted that the DEP issued numerous Notices of Violation regarding Twin Star Bull Creek Surface Mine No. 45, which evinces that the DEP was issuing Notices of Violation when it was presented with evidence of a clear violation of SCMRA by Twin Star.

In summary, neither the respondents in their second amended complaint nor the experts in their respective reports linked any alleged act or omission on the part of the DEP to any specific nondiscretionary duties imposed upon it by law, or alleged that the DEP had committed any express statutory or regulatory violations. Because the record is devoid of any evidence which demonstrates that the DEP's alleged discretionary acts or omissions are in violation of "clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or

---

[12] To the extent that the respondents do allege specific statutory and regulatory violations against Twin Star, they fail to connect any of these violations to DEP.

16

oppressive[,]" the DEP is entitled to qualified immunity pursuant to our well-established law. *A.B.*, 234 W. Va. at 497, 766 S.E.2d at 756, Syl. Pt. 11. We therefore find that the circuit court erred in denying the DEP's motion for summary judgment on the basis of qualified immunity.

## IV. Conclusion

For the foregoing reasons, we reverse the December 30, 2019, order entered by the Circuit Court of McDowell County, and remand the case for entry of an order granting the DEP summary judgment, thereby dismissing the action against it.

Reversed and remanded.